DAVIDSON v GENERAL MOTORS CORPORATION

Docket No. 57200. Submitted June 4, 1982, at Detroit.—Decided September 22, 1982.

In 1965, defendant, General Motors Corporation, entered into an agreement with plaintiff Jerome Davidson under which plaintiff was to become one of the three exclusive Buick dealers in the Flint area. GM breached its promise which drove plaintiff's dealership out of business. The dealership corporation, Jerry Davidson, Inc., paid off its creditors at 25 to 35 cents on the dollar. Mr. Davidson and Jerry Davidson, Inc., brought an action in the Wayne Circuit Court wherein the jury awarded Mr. Davidson $4.5 million in damages. The corporation had remained as a party-plaintiff until just before the jury was instructed. The trial court, John D. O'Hair, J., ordered a *remittitur* of the award to approximately $2.87 million on the ground that the damages awarded for lost profits for the years 1979 through 1988 were too speculative. Defendant appeals from the judgment in favor of plaintiff and from an order of the trial court denying defendant's motion for judgment notwithstanding the verdict or for new trial. Plaintiff cross-appeals from the order of the trial court remitting a portion of the damages awarded by the jury. *Held:*

1. There was sufficient evidence to support the jury's finding that a contract existed between Jerome A. Davidson, in an individual capacity, and General Motors Corporation.

2. The jury's award of damages was improperly calculated since the jury measured Mr. Davidson's damages solely by reference to the lost profits of the dealership corporation and not all of those profits would necessarily have been distributed to Mr. Davidson.

3. The proper measure of damages for breach of the contract is the pecuniary value of the benefits Mr. Davidson would have received if the contract had not been breached.

4. Two of the three alternative methods of calculating the

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 22 Am Jur 2d, Damages §§ 46, 47.
[2] 22 Am Jur 2d, Damages §§ 79, 174.

lost profits of the corporation presented to the jury were insufficiently reliable to be employed for that purpose; the third method, involving testimony from an expert witness, is adequate for that purpose.

5. Net profit is the appropriate measure for calculating the lost profits of the corporation; the expert witness's analysis which based his calculations on variable gross profit statistics was, therefore, erroneous.

6. Having chosen to operate in a corporate form, Mr. Davidson must abide by the consequences and cannot prove damages through a "reverse-pierce-the-corporate-veil" theory.

7. The trial court did not err in finding that damages for the years 1979 through 1988 could not be calculated with reasonable certainty. Mr. Davidson did not present sufficient evidence to justify submission of this portion of his claim to the jury.

Reversed and remanded for a new trial limited to the issue of damages.

1. CONTRACTS — BENEFITS OF BARGAIN — BREACH OF CONTRACT — DAMAGES.

A party to a contract is ordinarily entitled to the benefit of the bargain he has made; the proper measure of damages for breach of contract is, therefore, the pecuniary value of the benefits the aggrieved party would have received if the contract had not been breached.

2. CONTRACTS — BREACH OF CONTRACT — AUTOMOBILES — DAMAGES — LOST PROFITS — NET PROFITS.

An appropriate method of calculating the lost profits of an automobile dealership corporation in an action against an automobile manufacturer for breach of contract for an exclusive dealership is a net profit method, since the corporation's lost profits consist of the expected net profit per car multiplied by the number of cars that would have been sold if the contract had not been breached, less actual net profit.

*van Benschoten, Hurlburt & van Benschoten, P.C.* (by *Harvey E. van Benschoten* and *Lawrence A. Hurlburt*), for plaintiff.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Donald E. Shely* and *Nancy G. Edmunds*) and *Otis M. Smith*, General Counsel (by *Robert W. Culver*

and *Howard A. Silverman)* of counsel, for defendant.

Before: BRONSON, P.J., and R. M. MAHER and M. WARSHAWSKY,* JJ.

PER CURIAM. Defendant appeals as of right from a judgment in favor of plaintiff and from an order by the trial court denying defendant's motion for judgment notwithstanding the verdict or for new trial. Plaintiff cross-appeals an order of the trial court remitting a portion of the damages awarded by the jury.

In 1965, defendant General Motors Corporation (GM) entered into an agreement with plaintiff Jerome Davidson (plaintiff) under which plaintiff was to become one of the three exclusive Buick dealers in the Flint area. GM breached its promise (and the jury so found), which drove plaintiff's dealership out of business. The dealership corporation's creditors were paid off at 25 to 35 cents on the dollar.

The dispute eventually ended up in court, and the jury awarded plaintiff $4.5 million in damages.[1] The trial court ordered a *remittitur* of the award to approximately $2.87 million on the ground that the damages awarded for lost profits for the years 1979 through 1988 were too speculative. The parties appeal.

GM initially contends that there was no evidence to support the jury's finding that a contract existed between GM and plaintiff (in an individual capacity). We find this assertion quite remarkable.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Although Jerry Davidson, Inc., was originally a party plaintiff, only those claims made on behalf of Jerome Davidson in his individual capacity were considered by the jury. Plaintiff is the sole shareholder of the corporation.

The written contract was signed by plaintiff in an individual capacity and not as an officer of the dealership corporation. Plaintiff testified that GM's offer was made to him as an individual. Moreover, the circumstances surrounding the agreement support a reasonable inference that plaintiff was a party to the agreement. We are quite confident that GM is aware of the proper manner of ensuring that it is dealing with a person acting in a representative capacity.

We hold that there was sufficient evidence to support the jury's finding that a contract existed between plaintiff and GM.

GM also contends that the jury's award of damages was improperly calculated. We must agree. The record shows that the jury measured plaintiff's damages solely by reference to the lost profits of the corporation. Indeed, most of the evidence produced at trial related to the corporation's damages.[2] This approach is not the law.

A party to a contract is ordinarily entitled to the benefit of the bargain he has made.[3] The proper measure of damages for breach of contract is, therefore, the pecuniary value of the benefits the aggrieved party would have received if the contract had not been breached. Hence, the lost profits of the corporation only represent the damages suffered by the *corporation;* not all of these profits would necessarily have found their way into plaintiff's pocket.

The jury was instructed that plaintiff was entitled to recover the value of the dividends and bonuses he would have received as a shareholder

[2] The reason that so much of the evidence concerned corporate damages was that the corporation remained a party to the lawsuit until just before the jury was instructed.

[3] See, *e.g., Tel-Ex Plaza, Inc v Hardees Restaurants, Inc,* 76 Mich App 131, 134; 255 NW2d 794 (1977).

and employee of the corporation if GM had not breached the contract, less the dividends and bonuses actually received. However, plaintiff failed to present sufficient evidence specifically bearing on this issue.

Since the jury was permitted to base its award of damages solely on the lost profits sustained by the dealership corporation, we reverse and remand for a new trial limited to the determination of damages. We shall now address a number of issues which will arise again on retrial.

The fatal defect in plaintiff's proofs was the absence of evidence bearing on the proportion of the lost profits that would have eventually been distributed to plaintiff in the form of bonuses and dividends. Absent such evidence, plaintiff's damages could not be established with a reasonable degree of certainty.

Plaintiff presented to the jury three alternative methods of calculating the lost profits of the corporation. Two of these methods required reference to various projected estimates of such items as "profit opportunity", "net income", and "planning potential" contained in a GM marketing study. We find these two methods insufficiently reliable to be employed for the purpose of establishing the lost profits of the corporation.

We find the remaining method offered by plaintiff (involving testimony from an expert witness) adequate for the above purpose. We observe, however, that one aspect of the expert witness's analysis was erroneous. The witness, Michigan State University Professor of Economics John Henderson, based his calculations on variable gross profit statistics. Net profit was the appropriate measure, since the corporation's lost profits consist of the expected net profit per car multiplied by the num-

ber of cars that would have been sold if the contract had not been breached, less actual net profit.

We also reject plaintiff's efforts to prove damages through a "reverse-pierce-the-corporation-veil" theory. Having chosen to operate in a corporate form, plaintiff must abide by the consequences of that decision.

Finally, we hold that the trial court did not err in finding that damages for the years 1979 through 1988 could not be calculated with reasonable certainty.[4] In order to determine those damages, the jury had to guess how popular Buicks were going to be in those future years. Plaintiff did not present sufficient evidence to justify submission of this portion of his claim to the jury.

Reversed and remanded for a new trial limited to the issue of damages. No costs, neither party having prevailed in full.

---

[4] The trial court made this finding in connection with its order of *remittitur*. We observe, parenthetically, that in an apparent oversight the court failed to allow for damages for the years 1968 and 1969 in calculating the *remittitur*.