## GIORDANO v MARKOVITZ

Docket No. 159748. Submitted October 6, 1994, at Detroit. Decided
April 4, 1995, at 9:20 A.M.

Frederick Giordano brought an action in the Wayne Circuit Court
against Alan Markovitz and Almark, Inc., seeking the transfer
of shares of stock representing a one-third interest in Almark
on the basis of a number of different theories of recovery or the
restitution of the money that he had contributed toward the
construction of a bar that was to be owned and operated by
Almark. The plaintiff alleged that Markovitz led him to believe
that he was to receive a one-third interest in Almark upon
completion of the construction of the bar. The defendants did
not deny that the plaintiff had contributed almost one-third of
the cost of constructing the bar. The trial court, Pamela R.
Harwood, J., following a bench trial, found that there was no
contract for the transfer of the ownership interest and dis-
missed all of the plaintiff's claims except for the claim for
restitution of the undisputed financial contribution of the plain-
tiff and entered judgment for the plaintiff with respect to the
restitution claim. The plaintiff appealed.

The Court of Appeals *held:*

1. The trial court's finding that there was no agreement that
the plaintiff was to receive a one-third interest in the enter-
prise was clearly erroneous. The essentially uncontroverted
proofs presented at trial clearly establish that such an agree-
ment was made and that the person listed on the application
for a liquor license instead of the plaintiff was intended to be a
surrogate for the plaintiff.

2. The plaintiff's partial performance of the agreement by the
infusion of almost one-third of the cost of the project was
sufficient to remove the agreement from the operation of the
statute of frauds. The doctrine of partial performance not only
applies to transactions involving the sale of real estate, but also
applies to the transactions involving the sale or subscription of
securities.

3. Although the plaintiff seeks specific performance of the
agreement to transfer to him the promised one-third of the
stock of Almark, such a remedy requires a strong showing that
enforcement of the promise is necessary to avoid injustice.

Because an award of money damages would be sufficient to avoid injustice and because the strained relations between the parties renders specific performance inadvisable, the appropriate remedy on remand is an award of money damages in an amount representing the plaintiff's loss of the benefit of the bargain.

Reversed and remanded.

*Tyler, Xuereb & Nelson, P.C.* (by *Joseph M. Xuereb*), for the plaintiff.

*Robert Horvath*, for the defendant.

Before: MICHAEL J. KELLY, P.J., and W. P. CYNAR* and P. D. SCHAEFER,** JJ.

PER CURIAM. Plaintiff appeals as of right a verdict, entered by the trial court following a bench trial, that found no cause of action for ten of his eleven counts and awarded him $139,914.83 in restitution plus prejudgment interest.

Plaintiff and defendant Markovitz were equal partners in Malan Entertainment, a corporation operating "BT's," a topless bar. Plaintiff, Markovitz, and James Aboud formed ABT Corporation for the purpose of purchasing and operating "Can-Can's," another topless bar. Each party had a one-third ownership interest in ABT. Before the Liquor Control Commission (LCC) approved ABT's request for a liquor license and before the purchase of the topless bar was consummated, Markovitz, Aboud, and David Lachman incorporated defendant corporation, Almark, Inc., with the purpose of purchasing yet another topless bar, "Basin Street," which eventually became know as "Trumpps." The ABT project subsequently languished, and the sellers withdrew.

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment pursuant to Administrative Order No. 1994-7.

** Circuit judge, sitting on the Court of Appeals by assignment.

According to plaintiff, Markovitz led him to believe that Lachman was only a strawman used in plaintiff's place at the time of Almark's incorporation and promised plaintiff a one-third ownership interest in the corporation when Trumpps opened. Plaintiff further testified that he contributed $165,000 to the construction costs of Trumpps in accordance with his one-third ownership interest in Almark and provided many hours of labor at the construction site in furtherance of Trumpps' interest. Markovitz allegedly represented to others that plaintiff was an owner of Trumpps. Monies from BT's were used to pay costs incurred in the construction of Trumpps.

Nonetheless, after receiving the LCC's approval and closing the sale on Trumpps but before construction was completed, Markovitz offered plaintiff and Aboud a mere twenty percent interest in Almark, or twenty-five percent if they assigned Markovitz their voting rights.[1] Plaintiff and Aboud subsequently filed the instant action for breach of contract to transfer shares, promissory estoppel, fraud and misrepresentation, breach of fiduciary duties, constructive trust, quantum meruit, and restitution. Aboud dismissed his claims when he learned that the shares representing his one-third interest already had been issued to him. The trial court found that no contract had been made and dismissed all the counts except for the one for restitution, which it limited to financial contributions admitted by defendants.

Plaintiff first argues that the trial court erred in finding that no enforceable agreement existed regarding his one-third ownership interest in Almark. Findings of fact by the trial court are

---

[1] Markovitz' unwillingness to have only a minority interest in Almark may have been related to a lawsuit filed against him at that time by his partners in another venture, Tycoons.

reviewed for clear error. MCR 2.613(C). Our review of the evidence indicates that the trial court's conclusion was clearly erroneous. Plaintiff and Aboud, two of the three parties to the alleged agreement, testified that an agreement was reached. Plaintiff's contributions to the Trumpps project, Lachman's lack of contributions, and Markovitz' representations about plaintiff's status as a partner lent further support to this testimony. Markovitz did not testify. Essentially, there was unrefuted evidence that an agreement existed. The fact that plaintiff was not listed on the LCC application, while perhaps improper, did not nullify, abrogate, or disprove the agreement.

Furthermore, plaintiff's partial performance of the agreement was sufficient to remove it from the statute of frauds.[2] See *McDonald v Scheifler,* 323 Mich 117; 34 NW2d 573 (1948); *Madison Nat'l Bank v Lipin,* 57 Mich App 706, 719; 226 NW2d 834 (1975). Plaintiff's infusion of $139,914.83 into the Trumpps project, conceded by defendants, was close to one-third of the $500,000 budgeted for acquisition and start-up.

We find unpersuasive defendants' argument that the doctrine of part performance is inapplicable to agreements for the sale or subscription of securities in light of *Dumas v Auto Club Ins Ass'n,* 437 Mich 521, 540-541; 473 NW2d 652 (1991). The *Dumas* Court declined to apply the doctrine to the plaintiff's employment contract primarily because it was covered by the statute of fraud's prohibition regarding oral agreements incapable of performance within one year of being made:

" 'As the prohibition relates not to the subject

---

[2] This issue was not reached by the trial court. However, because the issue is dispositive in light of our holding regarding the existence of an oral contract, and because the parties have discussed the issue in their briefs, we will address it for the first time on appeal.

matter, nor to the nature of the undertaking, but to the *time of the performance itself,* it seems impossible for any part performance to alter the relations of the parties, by rendering the contract one which, by its terms may be performed within one year.' " [*Id.,* quoting *Ordon v Johnson,* 346 Mich 38, 46; 77 NW2d 377 (1956), quoting Pomeroy, Specific Performance (3d ed), § 100, p 241. Emphasis in original.]

In noting the lack of cases applying the doctrine of part performance to contracts other than for the sale of land, the *Dumas* Court did not hold that the doctrine applies only to real estate contracts. Rather, it essentially recognized that the real estate contract provision of the statute of frauds is one based on the subject matter of the contract and not on the time of performance. Here, whether falling under the statute of frauds provision of MCL 450.1305; MSA 21.200(305) (subscription agreements) or MCL 440.8319; MSA 19.8319 (agreements for the sale of securities), the agreement in this case is required to be in writing because of its subject matter, not because of its time frame.

In light of our holding that defendants breached an enforceable ownership agreement with plaintiff, we must also address the proper remedy. Plaintiff urges this Court to order specific enforcement of the agreement under principles of promissory estoppel. However, such a remedy requires a showing that enforcement of the promise is necessary to avoid injustice. *Parkhurst Homes, Inc v McLaughlin,* 187 Mich App 357, 360-361; 466 NW2d 404 (1991). In this case, there is no reason why money damages for plaintiff's breach of contract claim would not be sufficient to avoid injustice. Further, the strained relations among the parties also renders specific performance inadvisable. We

therefore remand for calculation of benefit-of-the-bargain damages. See *Davidson v General Motors Corp,* 119 Mich App 730, 733; 326 NW2d 625 (1982), modified on rehearing 136 Mich App 203; 357 NW2d 59 (1984).

Our holding regarding plaintiff's breach of contract claim obviates the need for decision of his remaining claims.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.