THERMATOOL CORPORATION v BORZYM

Docket No. 202598. Submitted November 12, 1997, at Detroit. Decided
January 16, 1998, at 9:15 A.M.

Thermatool Corporation and Alpha Industries, Inc., brought an action
in the Oakland Circuit Court in March 1997 against John J. Borzym,
Maxzym, Inc., and Tru-Motion Automation System, Inc., seeking a
preliminary injunction that would extend the provision of a non-
competition agreement that had, by its own terms, expired on
October 31, 1996. On October 31, 1986, Thermatool purchased
Alpha Industries from Borzym and his relatives. The parties exe-
cuted a noncompetition agreement in which Borzym agreed not to
compete with Thermatool for a period of five years after the later
of either his termination of employment with Alpha or his last roy-
alty payment from Thermatool. Borzym quit working for the plain-
tiffs in 1988, but he continued to receive royalty payments from
Thermatool until October 31, 1991, which by the terms of the non-
competition agreement would extend the noncompetition period to
October 31, 1996. In May 1992, Borzym and Maxzym, a consulting
company owned by Borzym, had brought an action in the Oakland
Circuit Court against Thermatool and Alpha, claiming that
Thermatool and Alpha had breached the employment contract with
Borzym and that the noncompetition agreement was unreasonable
and unenforceable. The circuit court in that action granted sum-
mary disposition for Thermatool and Alpha, finding that any breach
of the employment contract had not been material and that the
noncompetition agreement was reasonable and enforceable.
Borzym and Maxzym appealed the judgment in that case. During
the pendency of that appeal, Thermatool and Alpha filed in the
prior action a motion for postjudgment relief, alleging that Borzym,
through Tru-Motion, another company owned by him, had breached
the noncompetition agreement by bidding for in May 1994 and sup-
plying in January 1995 a machine to a customer of the plaintiffs.
Following an evidentiary hearing, the circuit court in the prior
action found that the noncompetition agreement had been
breached, awarded damages, and extended the effective period of
the noncompetition agreement through April 30, 1998. In an appeal
of the postjudgment order, the Court of Appeals reversed the deci-
sion of the circuit court, finding that the circuit court had improp-

erly amended its prior judgment during the pendency of the appeal of that prior judgment. The disposition of the appeal of the postjudgment order precipitated the filing of the action now at issue. The circuit court, Richard D. Kuhn, J., which had heard the prior action, held an evidentiary hearing concerning the question whether a preliminary injunction should be issued, at which the parties stipulated the admission of exhibits that had been admitted in the evidentiary hearing in the prior action. The circuit court thereafter entered a preliminary injunction prohibiting the defendants from violating the terms of the noncompetition agreement, which the court extended through April 30, 1998. The defendants appealed by leave granted.

The Court of Appeals *held*:

1. Although agreements not to compete are statutorily recognized in Michigan, MCL 445.774a(1); MSA 28.70(4a)(1), as long as they are reasonable, there is no Michigan authority with respect to the question whether a court may extend the term of a noncompetition agreement as a remedy for a breach of the agreement. There is a split of authority in other jurisdictions with respect to the question whether the term of a noncompetition agreement may be extended. The better view is that the term of a noncompetition agreement may be extended by a court under appropriate circumstances, such as where monetary damages for a breach of an agreement cannot be determined with any degree of certainty. Such an equitable modification of a noncompetition agreement so as to make it reasonable to both parties is consistent with the intent of the Michigan statutory scheme.

2. In determining whether to issue a preliminary injunction, a court must consider four factors: the harm to the public interest if the injunction issues; whether the harm to the applicant in the absence of temporary relief outweighs the harm to the opposing party if the temporary relief is granted; the likelihood that the applicant will prevail on the merits; and a showing that the applicant will suffer irreparable injury if the temporary relief is not granted.

3. Because of the trial court's familiarity with the facts of this case, having heard not only this case but also the preceding litigation that arose out of the same factual setting, and given the absence of any compelling contradictory evidence, the trial court's finding that the plaintiffs are likely to prevail on the merits must be given substantial deference.

4. The trial court erred, however, in finding that the plaintiffs would have suffered irreparable injury if the injunction had not been issued. A single identifiable breach, such as was pleaded here,

is easily remedied by damages and, thus, cannot be said to give rise to an irreparable injury that can only be remedied by the equitable remedy of a preliminary injunction. Further, under the circumstances of this case, the remedy that the plaintiffs sought, an extension of the terms of the noncompetition agreement, would be just as efficacious to the plaintiffs if it had been granted after a finding for the plaintiffs on the merits, while the harm to the defendants of granting such an extension by means of a preliminary injunction cannot be undone if the defendants prevail on the merits. Accordingly, the trial court erred in granting the preliminary injunction extending the term of the noncompetition agreement.

Reversed and remanded.

CONTRACTS — AGREEMENTS NOT TO COMPETE — REMEDIES.

A court, under appropriate circumstances, may extend the term of an agreement not to compete as a remedy for a breach of the noncompetition agreement; such an extension of the term of a noncompetition agreement is consistent with the Michigan statute permitting such agreements (MCL 445.744a[1]; MSA 28.70[4a][1]).

*Harness, Dickey & Pierce, P.L.C. (by Robert J. Lenihan, II), for the plaintiffs.*

*Dickinson, Wright, Moon, Van Dusen & Freeman (by Lawrence G. Campbell, Robert W. Powell, and Mary Beth Kelly), for the defendants.*

Before: BANDSTRA, P.J., and CAVANAGH and MARKMAN, JJ.

PER CURIAM. Defendants, John J. Borzym, Maxzym, Inc., and Tru-Motion Automation Systems, Inc., appeal by leave granted from the entry of a preliminary injunction that extended the terms of a noncompetition agreement that expired on October 31, 1996. We reverse and remand.

In 1986, defendant Borzym was the president of plaintiff Alpha Industries. The stock of Alpha was owned by Borzym and his relatives. On October 31, 1986, plaintiff Thermatool Corporation purchased Alpha for $2,365,000. In addition, Thermatool agreed

to pay Borzym a royalty of five percent of annual sales above $2.5 million for a period of five years after the sale.[1] The parties also executed a noncompetition agreement, in which Borzym promised not to compete with Thermatool for a period of five years after the later of the termination of his employment with Alpha or his receipt of the last royalty payment from Thermatool.[2] Borzym stopped working for plain-

---

[1] The royalty was in return for assets such as good will, technological expertise, patents, and trade names, as well as the agreement not to compete.

[2] The agreement contained the following provision:

8. *Non-Disclosure of Information, Non-Compete Provisions.* Borzym acknowledges that in and as a result of his employment with Alpha, he has had and will continue to have access to, be making use of, acquiring and/or adding to the confidential information as hereafter defined of Alpha and Thermatool, their affiliated companies and/or any successors thereto. As used herein, confidential information includes trade secrets and information relating to the systems, procedures, manuals, confidential reports, financial reports and lists of customers, of Alpha and/or Thermatool, as well as the nature and types of services rendered by Alpha and Thermatool, the equipment and methods used and preferred by Alpha's customers and clients, and the fees paid by them. Borzym also understands and acknowledges that Alpha and Thermatool consider all of the confidential information to be proprietary and desire to keep it from any and all competitors. As a material inducement to Thermatool to enter into the Agreement and as an inextricable part thereof and to give the consideration stated heretofore, Borzym covenants and agrees that during any time when Alpha and/or Thermatool is paying Borzym any compensation in excess of Seventy-Five Thousand and 00/100 ($75,000.00) Dollars per year or any compensation under paragraph 4(b) hereof and for a period of five years thereafter:

(a) Borzym shall not disclose to any person, firm or corporation any confidential information.

(b) Borzym will not solicit or entice any other employee of Alpha to seek employment elsewhere.

(c) Borzym shall not participate in any manner either actively, passively or in a consulting capacity with any person, firm or corporation designing, manufacturing, selling or marketing products competitive with those of Alpha or Thermatool.

tiffs approximately eighteen months after the sale. However, plaintiff continued to receive royalty payments for the entire five-year term of the contract, until October 31, 1991, collecting in excess of $1 million. Thus, under the terms of the parties' agreement, the noncompetition clause expired on October 31, 1996.

On May 14, 1992, Borzym and Maxzym, a consulting company owned by him, filed a complaint against plaintiffs claiming that they breached the terms of the employment contract with Borzym and requesting a declaratory judgment that the noncompetition agreement was unreasonable and unenforceable. The trial court determined that the noncompetition agreement was reasonable and enforceable and that any breach of the employment contract by plaintiffs was not material. Borzym appealed the decision to this Court; however, because the case was not submitted on case call until after the terms of the noncompetition agreement had expired, this Court dismissed the appeal as moot. See *Borzym v Thermatool Corp*, unpublished opinion per curiam of the Court of Appeals, issued March 21, 1997 (Docket No. 177043).

While the appeal was pending, plaintiffs filed a motion for postjudgment relief on the basis that Borzym had violated the noncompetition agreement. Plaintiffs alleged that on May 22, 1994, Borzym, through defendant Tru-Motion, a company owned by him, submitted a bid to one of plaintiffs' customers,

---

(d) Nothing in the foregoing shall prohibit Borzym from engaging in any business that is not in competition with Alpha and/or Thermatool, investing in the securities of any corporation having securities listed on a national security exchange, or from giving personal or professional references for any person.

Bosal International, for the production of a flying shear cutoff machine[3] and subsequently built and installed the machine for Bosal.

The trial court conducted an evidentiary hearing in September 1995. In an opinion and order issued December 14, 1996, the trial court concluded that Borzym violated the terms of the noncompetition agreement. The court awarded $30,040 to plaintiffs and extended the terms of the noncompetition agreement for an additional eighteen months beyond October 31, 1996, in order to give Thermatool the benefit of its bargain. Defendants filed a motion for peremptory reversal in this Court. On February 7, 1997, this Court granted defendants' motion on the basis that the trial court had improperly amended its previous judgment, which at that time was on appeal in this Court. See *Borzym v Thermatool Corp*, unpublished order of the Court of Appeals, entered February 21, 1997 (Docket No. 200212).

On March 7, 1997, plaintiffs filed their complaint in the instant case. Plaintiffs alleged that defendants competed with them by providing a flying shear cutoff machine to Bosal in January 1995 in violation of the noncompetition agreement. Plaintiffs requested a preliminary injunction extending the noncompetition agreement for a period equal to the time that Borzym violated the agreement. In their answer, defendants admitted that they placed a "prototype of a flying shear cutoff machine in Bosal's facility after January 31, 1995." However, defendant denied violating the noncompetition agreement. On March 23, 1997, the

---

[3] A flying shear cutoff machine is used in the tube industry to cut tubes while they are moving on the assembly line. An average cutoff machine sells for approximately $200,000 to $400,000.

trial court held a hearing on plaintiffs' request for a preliminary injunction. At the hearing, the parties stipulated the admission of seventy-five exhibits from the previous evidentiary hearing. On April 14, 1997, the trial court issued a preliminary injunction prohibiting defendants from violating the terms of the noncompetition agreement, which the trial court extended through April 30, 1998.

Defendants filed an emergency application for leave to appeal and a motion for peremptory reversal. This Court denied the motion for peremptory reversal but granted the application for leave to appeal. *Thermatool Corp v Borzym*, unpublished order of the Court of Appeals, entered June 10, 1997 (Docket No. 202598). Subsequently, this Court granted defendants' motion to expedite this appeal.

On appeal, defendants argue that the trial court erred in granting plaintiffs' request for a preliminary injunction. We review a trial court's decision whether to grant injunctive relief for an abuse of discretion. *Schadewald v Brulé*, 225 Mich App 26, 39; 510 NW2d 788 (1997).

Defendants argue that the trial court improperly extended the terms of the noncompetition agreement. Agreements not to compete are permissible under Michigan law as long as they are reasonable. MCL 445.774a(1); MSA 28.70(4a)(1) provides:

> An employer may obtain from an employee an agreement or covenant which protects an employer's reasonable competitive business interests and expressly prohibits an employee from engaging in employment or a line of business after termination of employment if the agreement or covenant is reasonable as to its duration, geographical area, and the type of employment or line of business. To the

extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement in order to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited.

The question whether a trial court may extend the terms of a noncompetition agreement as a remedy for a breach of the agreement is an issue of first impression in Michigan. Defendants rely on *Edelman Realty Co v Edelman*, 344 Mich 646; 75 NW2d 29 (1956), for the proposition that Michigan courts cannot extend the terms of a noncompetition agreement. However, *Edelman Realty Co* was decided before the enactment of MCL 445.774a(1); MSA 28.70(4a)(1).[4] Moreover, the passage quoted by defendants cites *Wedin v Atherholt*, 298 Mich 142; 298 NW 483 (1941), a case construing 1929 CL 16667; MSA 28.61, which declared all agreements not to engage in any employment void as contrary to public policy. See *Edelman Realty Co, supra* at 652; *Wedin, supra* at 145. Because *Edelman Realty Co* and *Wedin* were decided during the period when the Legislature had declared noncompetition agreements to be against public pol-

---

[4] MCL 445.774a(1); MSA 28.70(4a)(1) took effect on December 28, 1987, and applies to covenants and agreements that were entered into after March 29, 1985. Before the enactment of MCL 445.774a(1); MSA 28.70(4a)(1), the applicable statute was MCL 445.761; MSA 28.61, which provided:

All agreements and contracts by which any person, co-partnership or corporation promises or agrees not to engage in any avocation, employment, pursuit, trade, profession or business, whether reasonable or unreasonable, partial or general, limited or unlimited, are hereby declared to be against public policy and illegal and void.

icy, a position to which it no longer adheres, we conclude that they are not applicable in the instant case.

A number of courts in other jurisdictions have held that, under appropriate circumstances, an agreement not to compete can be extended beyond its stated expiration date as a remedy for a breach of the agreement. Some courts have concluded that such relief is permissible because the injury from a company's loss of good will can be difficult, if not impossible, to determine monetarily. See, e.g., *Basicomputer Corp v Scott*, 973 F2d 507, 511-512 (CA 6, 1992); *Overholt Crop Ins Co v Travis*, 941 F2d 1361, 1371 (CA 8, 1991); *Ferrero v Associated Materials Inc*, 923 F2d 1441, 1449 (CA 11, 1991); *Cordis Corp v Prooslin*, 482 So 2d 486, 489 (Fla App, 1986). Other courts have reasoned that the additional restraint time is necessary to give one party an opportunity to regain the customers that it lost when the other party breached the agreement. See, e.g., *Levitt Corp v Levitt*, 593 F2d 463, 469 (CA 2, 1979); *Presto-X-Co v Ewing*, 442 NW2d 85, 90 (Iowa, 1989). An additional rationale for extending an agreement not to compete beyond its stated expiration date after a party had violated it is that a contrary result would reward the breach of contract. See *Roanoke Engineering Sales Co, Inc v Rosenbaum*, 223 Va 548, 555; 290 SE2d 882 (1982).

Some courts, however, have refused to prolong a noncompetition agreement beyond its stated expiration date. The predominant rationale for rejection of this relief has been that the parties did not expressly provide for it in the original agreement. See, e.g., *Moraine Industrial Supply, Inc v Sterling Rubber Products Co*, 891 F2d 133, 136 (CA 6, 1989); *Olin Water Services v Midland Research Laboratories*,

*Inc*, 774 F2d 303, 305 (CA 8, 1985); *Gaylord Broadcasting Co v Cosmos Broadcasting Corp*, 746 F2d 251, 253, n 1 (CA 5, 1984). However, at least one court has simply concluded that specific relief is inappropriate after the period of restraint has expired. See *A-Copy, Inc v Michaelson*, 599 F2d 450, 452 (CA 1, 1978).

After careful consideration, we are persuaded that the better view is that, in appropriate circumstances, the term of a noncompetition agreement may be extended beyond its stated expiration date. Specific performance of an agreement may be an appropriate remedy where enforcement of the promise is necessary to avoid injustice. See *Giordano v Markovitz*, 209 Mich App 676, 680; 531 NW2d 815 (1995). In cases where a party has flouted the terms of a noncompetition agreement, the court should be able to fashion appropriate equitable relief despite the fact that the parties did not expressly provide for such relief in their agreement. Furthermore, as courts allowing extensions of the terms of noncompetition agreements have found, it may not be possible to determine monetary damages with any degree of certainty. Where this is the case, the breaching party should not be rewarded because the agreement has already expired. Although MCL 445.774a(1); MSA 28.70(4a)(1) does not address the proper relief in the event of a breach of a covenant not to compete, it does allow a court to modify an unreasonable agreement and to specifically enforce the agreement as modified. We therefore infer that it is permissible for a court to specifically enforce a reasonable agreement.

Having found that a covenant not to compete may be extended where circumstances warrant, we now examine whether the trial court properly granted injunctive relief in the present case. In determining whether to issue a preliminary injunction, a court must consider four factors: (1) harm to the public interest if the injunction issues; (2) whether harm to the applicant in the absence of temporary relief outweighs the harm to the opposing party if relief is granted; (3) the likelihood that the applicant will prevail on the merits; and (4) a demonstration that the applicant will suffer irreparable injury if the relief is not granted. *Ins Comm'r v Arcilio*, 221 Mich App 54, 77-78; 561 NW2d 412 (1997). Other considerations surrounding the issuance of a preliminary injunction are whether it will preserve the status quo so that a final hearing can be held without either party having been injured and whether it will grant one of the parties final relief before a hearing on the merits. *Campau v McMath*, 185 Mich App 724, 729; 463 NW2d 186 (1990). The trial court's decision must not be arbitrary and must be based on the facts of the particular case. *Ins Comm'r, supra* at 77.

Defendants challenge the trial court's findings with respect to two of the four factors. First, defendants argue that the trial court erred in finding that plaintiffs were likely to prevail on the merits.[5] However, the parties have been before the trial court for several years, and the trial court has presided over both an evidentiary hearing and a bench trial involving the issues related to these facts. In view of the trial

---

[5] Defendants allege that they provided Bosal with a prototype of a flying shear cutoff machine only after they received assurance that plaintiffs could not supply a machine that would conform to Bosal's specifications.

court's familiarity with this case, and absent any compelling contradictory evidence, we believe that the trial court's finding that plaintiffs are likely to prevail on the merits is entitled to substantial deference.

Defendants also challenge the trial court's finding that plaintiffs would have suffered irreparable injury if a preliminary injunction were not granted. The trial court based its findings on the fact that the parties had bargained for the period of noncompetition and that defendant Borzym breached that agreement. The trial court also concluded that plaintiffs' damages could not be determined monetarily.

We agree that the trial court erred in finding irreparable injury. A breach of the contract, by itself, does not establish that a party will suffer an irreparable injury. In order to establish irreparable injury, the moving party must demonstrate a noncompensable injury for which there is no legal measurement of damages or for which damages cannot be determined with a sufficient degree of certainty. The injury must be both certain and great, and it must be actual rather than theoretical. *Merrill Lynch, Pierce, Fenner & Smith Inc v E F Hutton & Co, Inc*, 403 F Supp 336, 343 (ED Mich, 1975). Economic injuries are not irreparable because they can be remedied by damages at law. *Acorn Building Components, Inc v Local Union No 2194, UAW*, 164 Mich App 358, 366; 416 NW2d 442 (1987). A relative deterioration of competitive position does not in itself suffice to establish irreparable injury. *Merrill Lynch, supra.*

In the present case, plaintiffs have alleged a single breach of the noncompetition agreement in the sale of one flying shear cutoff machine to a known customer. Any damages suffered by plaintiffs as a result

of that sale are easily calculable. In cases where courts have extended a covenant not to compete as a remedy for a breach, the breach has consisted of continuous and systematic activity in violation of the agreement. See, e.g., *Basicomputer Corp*, *supra* at 509; *Overholt Crop Ins*, *supra* at 1364-1365; *Ferrero*, *supra* at 1443; *Presto-X-Co*, *supra* at 87.

Moreover, we conclude that the trial court erred because, in granting the preliminary injunction, it granted plaintiffs the relief that they would be entitled to if they were to prevail in a trial on the merits. See *Campau*, *supra*. The extension of the noncompetition agreement past its expiration date imposes an injury on defendants that cannot be undone if they should prevail at trial. While there may be circumstances in which the breach of a noncompetition agreement warrants preliminary injunctive relief, we conclude that such a situation is not presented in the instant case. Accordingly, we hold that the trial court abused its discretion in granting plaintiffs' request for a preliminary injunction.

Finally, defendants claim that the injunction granted by the trial court was overbroad because it prohibited all competition, rather than just competition with regard to Bosal. We disagree. The noncompetition agreement provided that Borzym would not compete with any of plaintiffs' products. If, after a trial on the merits, plaintiffs have established that they are entitled to injunctive relief, there is no logical reason that the injunction should be limited to competition for Bosal's business.

Reversed and remanded for proceedings consistent with this opinion. No taxable costs pursuant to MCR 7.219, neither party having prevailed in full.