# STATE OF MICHIGAN

# COURT OF APPEALS

RED D FREIGHT, INC.,

        Plaintiff-Appellee,

v

STEVEN A. SEXTON, TS TRANSIT, LLC, GST
LOGISTICS, LLC, and GREG E. MORRISON,

        Defendant-Appellants.

UNPUBLISHED
October 24, 2017

No. 330834
Monroe Circuit Court
LC No. 15-138267-CB

Before: SAAD, P.J., and SERVITTO and GADOLA, JJ.

PER CURIAM.

Defendants, Steven A. Sexton, TS Transit, LLC (TS Transit), GST Logistics, LLC (GST Logistics), and Greg E. Morrison, appeal[1] the trial court's November 16, 2015 order that denied defendants' motion to dissolve a temporary restraining order (TRO) that was entered on October 2, 2015. Because this case is in the earliest stage of litigation and evidence regarding the merits has yet to be developed, this appeal only addresses the propriety of the issuance of a TRO. And because the trial court's ruling complied with the applicable court rule, we affirm.

## I. FACTUAL BACKGROUND

Plaintiff is a company that brokers freight services between customers and trucking companies. On October 3, 2011, plaintiff and Sexton entered into a broker/agent agreement where Sexton agreed, as an independent contractor, to supervise the servicing of plaintiff's accounts, to solicit and obtain new business for plaintiff, and to obtain qualified drivers and motor vehicle equipment. Overall, Sexton was to supervise the day-to-day functions of plaintiff's operations. An addendum attached to the October 3, 2011 contract included a "Back Solicitation" clause, which stated, "A complete and detailed list of [plaintiff's] customer/client base shall be maintained. If/when this contract is dissolved, [Sexton] agrees not to back-solicit [plaintiff's] customer/clients represented on this list for 1 year." On January 10, 2013, plaintiff and Sexton entered into an updated contract. However, for reasons not clear from the record, the

---

[1] We granted leave to appeal in *Red D Freight, Inc v Sexton*, unpublished order of the Court of Appeals, entered January 4, 2016 (Docket No. 330834).

-1-

parties did not execute an addendum of any kind, and the 2013 contract did not include a Back Solicitation clause. Similar to the 2011 contract, the updated 2013 contract included the following provision:

> Entire Agreement of Parties. This agreement cannot be changed orally and constitutes the entire contract between the parties hereto. This agreement may not be changed, modified or amended, in whole or in part, except in writing, signed by the parties hereto.

On July 2, 2014, plaintiff and TS Transit entered into a broker/carrier master agreement. TS Transit is a trucking company owned by Morrison that transported materials for plaintiff's customers. TS Transit agreed to provide services to plaintiff, and the contract included an "Account Protection" provision, which prohibited TS Transit from soliciting plaintiff's customers. If TS Transit was found soliciting a customer from plaintiff, the contract mandated a commission of 15% of the transportation revenue resulting from freight transported for the customer.

On October 2, 2015, plaintiff filed a verified complaint and a verified motion for a TRO against defendants and claimed that Sexton left his employment with plaintiff on September 17, 2015, went to work for TS Transit, and that

> [Sexton] was an independent contractor of [RDF]. [RDF] brokered significant amounts of freight to [TS Transit] on some of [RDF's] most profitable customers and shipping lanes. All [d]efendants created a common scheme where they formed a new entity, GST Logistics, to haul for companies Sexton learned of while he was an employee of [RDF].

The trial court entered a TRO on October 2, 2015, and cited the Back Solicitation clause of the 2011 addendum as support for prohibiting defendants from soliciting any customer or client serviced by plaintiff or from disclosing or transmitting plaintiff's confidential and proprietary business information and trade secrets. The trial court's order prohibited defendants from soliciting any customers in plaintiff's "Broker Customer/Client base," a list that was to be kept with plaintiff pursuant to Sexton's contract.

On October 12, 2015, defendants filed a motion to dissolve the TRO and argued that plaintiff "intentionally misled the Court to believe that there is a contractual relationship between [RDF] and [Sexton]." According to defendants, there was no binding restriction on competition between the parties because the 2013 contract between plaintiff and Sexton superseded the 2011 contract, including its addendum.

On that same day, the trial court held a hearing on defendants' motion to dissolve the TRO. Before making its ruling, the trial court discussed the rationale underlying its ruling:

> When the Court originally received this, I went through this and I was not going to issue the restraining order to start with. It was that I did come back on the back-solicitation provision and that was put in, at least the original contract, the 2011 contract for a reason. It wasn't--it wasn't in the original contract, it became an addendum to it. It's an interesting argument here, does the 2013

contract supersede the other one? I guess that becomes sort of a question of law. It might even be a question of fact that's going to have be [sic] ferreted out here, what did the parties intend by all this. I don't know, the contracts don't state it.

Counsel for [RDF] makes the argument that the two contracts stand side-by-side, maybe they do, I don't know that for a fact. But it was very important between all parties here that at least [Sexton] would not be able to use--and that's why when I crafted this restraining order, I referred specifically to that broker customer list only. You can see I crossed out a lot of other things in--in the temporary restraining order that he first learned of because some things he would know of. So, I limited it specifically to this list, that was important between the parties, it very well could have survived. I think it is material enough that that prohibition remains during the pendency of this case. It was a material and important item between the parties.

Based on the above rationale, the trial court ruled, "I think [RDF] has met its burden that the restraining order stays in effect as far as that goes and it will remain in effect. These contracts are basically identical with the exception that it wasn't included in the 2013 [contract]. It doesn't necessarily mean that it was negated." The trial court further held that plaintiff must submit a bill of particulars that outlines the specific trade secrets plaintiff alleged Sexton misappropriated.

On October 13, 2015, plaintiff provided defendants with a bill of particulars, which outlined the following purported trade secrets: (1) a customer/client list, (2) a carrier list, (3) rate information, and (4) business processes and procedures that were "[a]lready in the possession of Defendants." On November 30, 2015, defendants filed a motion for reconsideration, and claimed, *inter alia*, that the trial court should reconsider the issue involving trade secrets because plaintiff's bill of particulars did not "cite *any* information that would rise to the level of a trade secret under Michigan law." The trial court denied defendants' motion and held that defendants "failed to assert a new issue to be reconsidered." On appeal, defendants challenge the substantive and procedural aspects of the TRO.

## II. SUBSTANTIVE CHALLENGES TO THE TRO

Defendants argue that the trial court erred when it denied their motion to dissolve the TRO because (1) the 2011 contract and addendum were superseded by the 2013 contract, which has no "back solicitation" provision and (2) plaintiff failed to prove immediate and irreparable injury. We disagree.

### A. CONTRACT DISPUTE

This Court "review[s] for an abuse of discretion a circuit court's decision whether to grant injunctive relief." *Barrow v Detroit Election Comm*, 305 Mich App 649, 662; 854 NW2d 489 (2014). Moreover, "[a] trial court has discretion to vacate or modify a previously entered temporary restraining order." *Bowers v VanderMeulen-Bowers*, 278 Mich App 287, 295; 750 NW2d 597 (2008). "[A]n abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Barrow*, 305 Mich App at 662

(quotation marks and citation omitted). This Court reviews the proper interpretation and application of a court rule de novo. *Henry v Dow Chemical Co*, 484 Mich 483, 495; 772 NW2d 301 (2009).

Defendants argue that the trial court abused its discretion when it initially entered the TRO and later when it denied their motion to dissolve the TRO because the 2013 contract superseded the 2011 contract, which eliminated the non-solicitation provision. In essence, defendants assert that plaintiff's claim will fail on the merits, and for that reason, the TRO should be vacated.

The requirements for obtaining a TRO are set forth in MCR 3.310(B), which provides, in pertinent part:

(1) A temporary restraining order may be granted without written or oral notice to the adverse party or the adverse party's attorney only if

(a) it clearly appears from specific facts shown by affidavit or by a verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant from the delay required to effect notice or from the risk that notice will itself precipitate adverse action before an order can be issued[.]

Unlike a preliminary injunction, where our Supreme Court has set forth a well-established four-factor test,[2] the issuance of a TRO requires only that "it clearly appears from specific facts shown by affidavit or by a verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant from the delay required to effect notice." MCR 3.310(B)(1)(a). We hold that the information plaintiff supplied in its verified complaint is sufficient to meet the minimal standards set forth under MCR 3.310(B)(1)(a). According to plaintiff's verified complaint, Sexton entered into two agreements with plaintiff that contained a Back Solicitation clause, and Sexton was in direct violation of that clause because (1) he connived to take plaintiff's customers while still working for plaintiff and (2) when he left plaintiff, he solicited plaintiff's customers and misappropriated plaintiff's trade secrets. Based on Sexton's actions, the verified complaint provided that plaintiff will be irreparably harmed in the following manner:

(a) Disclosure of trade secrets, identity of customers, customer information, pricing information and other confidential information that is solely the property of [RDF];

---

[2] See *State Employees Ass'n v Dep't of Mental Health*, 421 Mich 152, 157-158; 365 NW2d 93 (1984) (holding that a preliminary injunction requires evaluating (1) the likelihood of success on the merits, (2) danger that the party seeking the injunction will suffer irreparable injury, (3) the risk that the party seeking the injunction will be harmed more by the absence of the injunction than the opposing party would be by granting the injunction, and (4) the harm to the public interest if the injunction is issued).

(b) Loss of confidentiality of [RDF's] records and business and financial dealings, loss of confidence and trust of clients, loss of goodwill and loss of business reputation;

(c) Damage to office stability, and a threat to the enforcement of agreements, Sexton and TS Transit signed with [RDF];

(d) Present economic loss, which is unascertainable at this time, and future economic loss.

Given the minimal requirements to issue a TRO under the court rule, the record supports the trial court's ruling. Plaintiff provided the foundation for the TRO and specific facts, which purported to show "immediate and irreparable injury, loss, or damage." MCR 3.310(B)(1)(a). Therefore, to the extent that defendant argues the trial court should have determined that the 2013 contract superseded the 2011 contract and addendum, i.e., it should have considered the likelihood of plaintiff's success on the merits, defendants' argument fails. No such requirement is contemplated under MCR 3.310(B), and no Michigan case has mandated such a showing.

We also must consider whether the trial court abused its discretion when it denied defendants' motion to dissolve the TRO after it held a hearing. Pursuant to MCR 3.310(B)(5), "At a hearing on a motion to dissolve a restraining order granted without notice, the burden of justifying continuation of the order is on the applicant for the restraining order . . . ." At the hearing, plaintiff vigorously advocated that the 2011 addendum survived the execution of the 2013 contract because "[t]here [was] no language anywhere in the 2013 agreement that says that it voids or terminates or supersedes any of the non-solicit provisions that are contained in the addendum to the 2011 agreement." In fact, plaintiff's counsel explained that "[a]t the time of the execution of that agreement, there were discussions between [RDF] and [Sexton] to that effect that the addendum and the non-solicit provisions in that addendum would remain in full force and effect." The trial court held, "I think [RDF] has met its burden that the restraining order stays in effect as far as that goes and it will remain in effect. These contracts are basically identical with the exception that it wasn't included in the 2013. It doesn't necessarily mean that [the 2011 addendum] was negated." According to the trial court, the merits of the case could be a question of law or possibly could be a question of fact and in either case would have to be "ferreted out" later. Thus, the trial court upheld the continuation of the TRO until a show cause hearing.

We hold that the trial court did not abuse its discretion when it held that plaintiff met its burden for continuing the TRO despite the legal issue underlying the contract dispute. The provisions of MCR 3.310(B)(5) do not require the applicant of a TRO to prove the entire merits of the case, and plaintiff provided a justification for the continuation of the order. We note that, ultimately, the trial court may find that the 2013 contract superseded, and therefore negated, the 2011 addendum because of the integration clause in the 2013 contract.[3] See *UAW-GM Human*

---

[3] But because it is not necessary, we offer no opinion on whether the 2011 addendum survived the execution of the 2013 agreement.

*Resource Center v KSL Recreation Corp*, 228 Mich App 486, 499; 579 NW2d 411 (1998) ("[A]n integration clause [in a contract] nullifies all antecedent agreements."). Indeed, the trial court should conduct an expedited hearing to determine if Sexton engaged in actionable misconduct in soliciting plaintiff's customers, both during and after his employment with plaintiff. Therefore, the trial court's decision to maintain the TRO at this early stage was not outside the range of reasonable and principled outcomes.

## B. IRREPARABLE INJURY

Defendants also argue that the trial court erred when it denied the motion to dissolve the TRO because plaintiff did not allege an irreparable injury sufficient to meet the standards that would warrant the issuance of a TRO under MCR 3.310(B)(2)(b).

While defendants filed a motion to dissolve the TRO, they did not argue the irreparable injury element of the TRO until they filed their motion for reconsideration. Because this issue was not raised until the motion for reconsideration, it is not preserved. See *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009). "A trial court has discretion to vacate or modify a previously entered temporary restraining order." *Bowers*, 278 Mich App at 295. However, this Court reviews unpreserved issues for plain error affecting substantial rights. *Demski v Petlick*, 309 Mich App 404, 426-427; 873 NW2d 596 (2015).

"In order to establish irreparable injury, the moving party must demonstrate a noncompensable injury for which there is no legal measurement of damages or for which damages cannot be determined with a sufficient degree of certainty." *Thermatool Corp v Borzym*, 227 Mich App 366, 377; 575 NW2d 334 (1998). Accordingly, "[e]conomic injuries are not irreparable because they can be remedied by damages at law," and "[a] relative deterioration of competitive position does not in itself suffice to establish irreparable injury." *Id*.

We discern no plain error. Here, plaintiff alleged, *inter alia*, that Sexton engaged in behavior to wrongfully steal plaintiff's clients. This type of behavior can result in the loss of customer goodwill, which "often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *Basicomputer Corp v Scott*, 973 F2d 507, 511 (CA 6, 1992); see also *Unibar Maintenance Servs, Inc v Saigh*, 283 Mich App 609, 631; 769 NW2d 911 (2009). Furthermore, plaintiff alleged that Sexton had misappropriated its trade secrets, and it is understood that any such misappropriation may merit injunctive relief. See MCL 445.1903 (providing that "[a]ctual or threatened misappropriation may be enjoined" until the trade secret ceases to exist). Accordingly, the trial court's decision to continue the TRO based on the irreparable injury alleged by plaintiff did not amount to plain error.

## III. PROCEDURAL CHALLENGES TO THE TRO

Defendants argue that the trial court erred when it denied their motion to dissolve the TRO because the trial court failed to (1) follow the procedural mandates of MCR 3.310 and (2) issued an overbroad TRO. We disagree.

## A. REQUIREMENTS UNDER MCR 3.310

Defendants argue that the trial court erred because the TRO failed to follow the procedural requirements set forth in MCR 3.310. First, defendants claim that the trial court's TRO does not state on its face the irreparable harm that plaintiff would suffer as required under MCR 3.310(B)(2)(b). Second, defendants claim the TRO "does not contain the required statement binding the parties, their officers, agents, etc." Third, defendants claim that the trial court failed to state in the TRO "the reason security is not required for its issuance." While defendants filed a motion to dissolve the TRO, they did not argue that the TRO failed to meet the procedural requirements under MCR 3.310. Therefore, our review is for plain error affecting substantial rights. *Demski*, 309 Mich App at 426-427.

The requirements of a temporary restraining order are set forth in MCR 3.310. Pursuant to MCR 3.310(B)(2)(b), a TRO must "describe the injury and state why it is irreparable and why the order was granted without notice." In addition, the court rule sets forth the form and scope of the injunction:

> **(C) Form and Scope of Injunction.** An order granting an injunction or restraining order
>
> (1) must set forth the reasons for its issuance;
>
> (2) must be specific in terms;
>
> (3) must describe in reasonable detail, and not by reference to the complaint or other document, the acts restrained; and
>
> (4) is binding only on the parties to the action, their officers, agents, servants, employees, and attorneys, and on those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise. [MCR 3.310(C)(1)-(4).]

Finally, MCR 3.310(D)(2) mandates that "if security is not required[,] the order must state the reason."

A trial court's TRO is improperly granted if it does not comply with the requirements under MCR 3.310. *Hawkins v Murphy*, 222 Mich App 664, 668; 565 NW2d 674 (1997), superseded by statute on other grounds as stated in *Glaubius v Glaubius*, 306 Mich App 157, 174; 855 NW2d 221 (2014).

It is apparent that the TRO fails to "describe the injury and state why it is irreparable and why the order was granted without notice." MCR 3.310(B)(2)(b). Instead, the TRO only states, in detail, the actions that defendants were prohibited from taking. Furthermore, nothing in the record indicates that security was required, and under MCR 3.310(D)(2), "if security is not required[,] the order must state the reason." Again, the TRO failed to provide any information regarding security.

Although defendants have proven the presence of plain errors, they have failed to show how the errors affected their substantial rights. While the TRO does not describe the irreparable injury on its face, plaintiff included in its verified complaint a relatively detailed outline of the

-7-

injury suffered due to defendants' actions. At the trial court, defendants focused their efforts on the underlying contractual issue, but they never raised the issue related to irreparable injury. Defendants have not stated how, in any way, the failure to include the description of the injury in the TRO prejudiced them. Furthermore, defendants also fail to make a similar showing as it relates to the TRO's failure to include a statement regarding why security was not required pursuant to MCR 3.310(D)(2). Security has never been at issue, and any failure to include in the TRO information regarding security is not prejudicial.

Defendants also argue that the TRO is defective because, contrary to MCR 3.310(C)(4), there is no statement binding the parties. However, MCR 3.310(C) states, "An order granting an injunction or restraining order . . . (4) is binding only on the parties to the action, their officers, agents, servants, employees, and attorneys, and on those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." The court rule does not require trial courts to provide any such extraneous statements that the TRO is binding on the parties; instead, the court rule simply provides that the TRO is binding "only" on the parties to the action. Consequently, defendants have failed to prove any error in this regard.

## B. OVERBROAD TRO

Defendants argue that the TRO was overbroad because it included Morrison, TS Transit, and GST Logistics, though they did not have a contractual obligation under the contract between Sexton and plaintiff. We disagree. "A trial court has discretion to vacate or modify a previously entered temporary restraining order." *Bowers*, 278 Mich App at 295.

An injunction that is properly entered may, nevertheless, require redrafting because it is too restrictive and overbroad. See *Hayes-Albion v Kuberski*, 421 Mich 170, 189-190; 364 NW2d 609 (1984) (holding that the plaintiffs were entitled to injunctive relief, but the injunction should be redrafted more narrowly).

The trial court here determined that Morrison, TS Transit, and GST Logistics, as parties to the lawsuit, were possibly working with Sexton to solicit customers from plaintiff. The fact that there was no employment-type contractual relationship between plaintiff and defendants Morrison, TS Transit, and GST Logistics is not controlling. Plaintiff alleged that all of the named defendants conspired to obtain plaintiff's customers and misappropriate its trade secrets, and, therefore, the TRO properly included all four defendants, which prohibited them from contacting plaintiff's clients pursuant to the client list provided. At the very least, there was evidence that they were "in active concert or participation with" Sexton and, due to being parties to the lawsuit, had notice of the injunction. Sexton admitted that he went to work for TS Transit owned by Morrison. Furthermore, Morrison owned GST Logistics, a company directly competing with plaintiff. Based on these facts, plaintiff claimed Sexton was obtaining customers while working with TS Transit so that Morrison and GST Logistics could use those customers to broker deals with TS Transit. These facts support a finding that TS Transit, GST Logistics, and Morrison may have been working in active concert with Sexton to divert customers from plaintiff. Therefore, the TRO was not overly broad, and the trial court's decision to continue the TRO against all defendants was within a range of reasonable and principled outcomes.

## IV. MOTION FOR RECONSIDERATION

Defendants contend that the trial court erred when it denied their motion for reconsideration because plaintiff's bill of particulars listed items that do not constitute trade secrets under the Michigan Uniform Trade Secrets Act (MUTSA), MCL 445.1901, *et seq*. We disagree.

When seeking reconsideration, "[t]he moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error." MCR 2.119(F)(3). A motion which merely presents the same issue as ruled on by the court, either expressly or by reasonable implication, will not be granted. MCR 2.119(F)(3). Finally, it is well established that a trial court does not abuse its discretion if it denies a motion for reconsideration based on facts or arguments that could have been presented previously but were not. *Woods v SLB Prop Mgmt, LLC*, 277 Mich App 622, 630; 750 NW2d 228 (2008).

Pursuant to MCL 445.1903, "Actual or threatened misappropriation may be enjoined" until the trade secret ceases to exist. Defendants argue that plaintiff has at no time presented actual trade secrets as defined under the MUTSA that merit the imposition of a TRO. Pursuant to MCL 445.1902(d), a "trade secret" is defined as

information, including formula, pattern, compilation, program, device, method, technique, or process, that is both of the following:

(*i*) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(*ii*) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

At the hearing on defendants' motion to dissolve the restraining order, the trial court denied defendants' motion but also noted, "I agree that perhaps [RDF] needs to identify what are the trade secrets that are perhaps being used by [Sexton that] are not customary or standard in the business." Accordingly, the trial court required plaintiff to provide a bill of particulars. On October 13, 2015, a day after the motion hearing, although not filed with the trial court, plaintiff provided defendants with a bill of particulars, which claimed that the trade secrets were plaintiff's customer list, carrier list, rate information, and "Business Processes and Procedures."[4]

---

[4] It is clear that the trial court did not rely on the bill of particulars when it denied defendants' motion to dissolve the TRO because (1) the record does not show that the bill of particulars was ever filed with the trial court and (2) the court's order to deny defendants' motion contained the request for plaintiff to provide a bill of particulars.

Defendants aver that plaintiff's customer list, carrier list, rate information, and other general "business processes" alleged in its bill of particulars do not meet the definition of a "trade secret" under the MUTSA. However, defendants' argument assumes that this Court should determine the merits of the underlying trade secret claim. Defendants sought to have the trial court, and now this Court, resolve the merits of the claim under the MUTSA, but, once again, the issue is whether the TRO was proper under the provisions of MCR 3.310, which does not require an analysis of the likelihood of success on the merits. Thus, this Court need not reach the merits of whether the trade secrets alleged by plaintiff meet the definition of a "trade secret."[5]

The trial court did not abuse its discretion when it denied defendants' motion for reconsideration because it had already ruled on the issue relating to the TRO, and the proper avenue for determining whether the trade secrets alleged in the bill of particulars warranted the issuance of a preliminary injunction would have been at a show cause hearing. See MCR 3.310(A). The trial court already determined that the TRO should be entered despite its reservations related to the trade secrets alleged in plaintiff's verified complaint and motion for a TRO. Moreover, because the trial court did not rely on the bill of particulars when it granted the TRO, it appears that the request for a bill of particulars was for future rulings—likely at a show cause hearing to determine whether a preliminary injunction would be necessary.

Affirmed. Plaintiff, as the prevailing party, may tax costs pursuant to MCR 7.219.


/s/ Henry William Saad
/s/ Michael F. Gadola

---

[5] The record shows that plaintiff provided no more detail in its bill of particulars than what was initially alleged in its verified complaint and motion for a TRO. The information provided in the bill of particulars could very well be trade secrets considering that, in certain limited circumstances, customer lists, rate information, and other information about a company may constitute a trade secret. See *Hayes-Albion*, 421 Mich at 183 (suggesting that customer lists may constitute trade secrets if they are compiled and kept secret by the employer and contain solutions to particular customers' problems). Furthermore, plaintiff's "Business Processes and Procedures" may be trade secrets under MCL 445.1902(d) due to the fact that a "process" is listed in the definition of a trade secret. Although this lack of specificity may be fatal to a request for a preliminary injunction, see *CMI Int'l, Inc v Intermet Int'l Corp*, 251 Mich App 125, 134; 649 NW2d 808 (2002), the requirements for the issuance of a TRO are less stringent.