BALTIC MINING CO. *v.* HOUGHTON CIRCUIT JUDGE.

1. INJUNCTION—MANDAMUS—RESTRAINING VIOLENCE—STRIKES.
    Before applying for the writ of mandamus to require the circuit court to reinstate an injunction against unlawful acts, dissolved upon motion of defendant members of a miners' union, who were engaged in a strike, it was proper practice to apply to the court by motion and by affidavits in support thereof, showing concerted acts of violence and intimidation and praying for a restraining order against the same, where, on dissolution of the interlocutory injunction, the court had expressly reserved the right to issue a restraining order with or without notice.

2. SAME—EQUITY.
    Upon the refusal of the circuit court to issue a restraining order as prayed, based on the alleged ground that it had no power to do so because the bill was deficient, and exercising no discretion upon the showing made, the question for the Supreme Court in mandamus proceedings was one of law.

3. SAME—AFFIDAVITS—CONSPIRACY.
    The bill for an injunction against strikers to restrain existing and threatened violence, intimidation and conspiracy, supported and accompanied by affidavits, must

be taken as true on a motion to dissolve, in the absence of answers or affidavits denying the averred facts.

4. SAME—DEMURRER—STRIKES—MINES AND MINING.

An injunction bill filed by the owners of several copper mines against the Western Federation of Miners, averring that defendants inaugurated a general strike of its members during the preceding summer, that upward of 4,000 employees of the defendants had refused to participate in the strike and tried to continue their employment but defendants had interfered with them, by force, threats and intimidation, causing them to stop work at the pumps, the mines to partly fill up with water and forcing suspension of work, further setting up the existence of lawlessness, violence, and conspiracy, accompanied by acts of intimidation, and further threatened violent unlawful acts, set forth in detail, and the sending of State troops to restore order, and failure to effect that result, was not demurrable and sustained a preliminary injunction issued upon the showing.

5. SAME—VERIFICATION—AFFIDAVIT—EQUITY PRACTICE.

There was also no ground for the objection that the bill was not properly verified, where seven affiants swore to the facts of their own knowledge "except as to matters therein stated upon information and belief" and the material, essential averments were stated positively.

6. SAME—INSUFFICIENCY—BILL OF COMPLAINT.

General certainty is all that is required in a bill of complaint; it is not necessary to relate all the details.

7. SAME.

In order to justify the issuance of a preliminary injunction, the court need not find that the complainant's rights have been clearly established, or that complainant is entitled to prevail at the hearing; if a substantial question exists, cognizable in equity, and in order to prevent irremediable injury to the complainant it appears to be necessary to prohibit any change in the conditions and relations of the subject-matter or parties, an injunction is warranted.

8. SAME—CONSPIRACY—VIOLENCE—RESTRAINING UNLAWFUL ACTS.

Courts of equity have authority to restrain conspiring labor organizations from molesting by violence, threats and intimidation those engaged in any lawful employment and those who employ them.

9. SAME—PARADING.

> Peaceable meetings or parades permitted under an injunction restraining violence and threats do not include parades near the premises of the working miners so timed as to impede or intimidate them in going to or returning from work, or loitering near the premises of the mines or homes of the laborers, intended to intimidate the men.

Mandamus by the Baltic Mining Company and others against Patrick H. O'Brien, circuit judge for the county of Houghton, to compel respondent to vacate an order dissolving a preliminary injunction. Submitted November 18, 1913. (Calendar No. 25,905.) Writ granted December 10, 1913.

*Rees, Robinson & Petermann (Hanchette & Lawton* and *Otto Kirchner,* of counsel), for relators.

*A. W. Kerr, Le Genrde & Driscoll,* and *E. A. McNally,* for respondent.

PER CURIAM. On October 7, 1913, relators filed in this court their petition for a mandamus to the circuit judge of Houghton county directing him to set aside and vacate an order made September 29, 1913, dissolving a preliminary writ of injunction previously granted by him and issued from his court restraining certain acts of violence and intimidation charged in the bill of complaint; also asking in said petition that pending these proceedings this court suspend such order of dissolution and continue said injunction in force. On October 8, 1913, an order to show cause why a writ of mandamus should not issue was granted, returnable November 4th ensuing, and the order of the lower court dissolving said injunction was stayed and suspended *pendente lite,* with the provision that peaceable meeting and parading be not restrained.

The bill of complaint, pursuant to which the temporary injunction in question issued, was filed by re-

lators in Houghton county against the Western Federation of Miners, a voluntary, unincorporated society known as a labor union, its district and local unions, their officers and members. Said bill, after stating the organization and situation of the parties and averring that a general strike was called and inaugurated by defendants in the copper mining district of Lake Superior, on July 23, 1913; that upward of 4,000 miners in complainants' employ not allied with defendants refused to participate in the strike, and endeavored to continue at work; that defendants by threats and violence interfered with and drove them from their work, stopped the pumps at the mines, causing the latter to partially fill with water, and thus forcing suspension of work in many places; that a condition of violence and lawlessness developed in the district where the strike prevailed beyond the power of the civil authorities to control, resulting in the governor of the State sending there the entire military force of the Commonwealth to preserve order, and protect persons and property, but, nevertheless, the acts of violence, disorder, and intimidation of those desirous of work continued — further charges, amongst other things—

"That from the day of the inception of the said strike the said defendants * * * did unlawfully combine and conspire together * * * with the illegal intent and unlawful purpose and by illegal and unlawful means, to prevent the employees of your orators, and of each of them from working at the mines and other operations of your orators, * * * and to force the cessation of all operations of your orators," * * * and * * * "the said defendants, members of said federation, at the several mines and premises of your orators and in the vicinity or neighborhood thereof, have assaulted and beaten many of the employees of your orators in cases far too numerous to mention or set forth, and that such assaults and beatings, threats of bodily harm, intimidations, violence, and riotous conduct continue daily

to the time of the filing of this bill" * * * and that members of the said federation "have systematically and do now systematically, unlawfully by threats, intimidations, force, violence, assaults, picketing, threatening parades, riotous and threatening gatherings in large numbers, and by other unlawful means, interfere with and molest and disturb, without authority of law, the mechanics and laborers who are employees of your orators in the quiet and peaceable pursuit of their respective lawful avocations, contrary to the statute in such case made and provided;" * * * and "that in such furtherance of said unlawful combination and conspiracy, the said defendants * * * from day to day, with great force and violence, do attack various of the employees of your orators and do throw rocks and stones and other missiles at them, and do gather in threatening numbers, and with threats of violence and of injury to the persons of said employees and their families, about the dwellings and residences of said employees, and do threaten violence and injury to said employees and their families and destruction of their homes, unless they, the said employees, refrain and desist from working for your orators. And they, the said defendants, members of said federation, with their wives and others conspiring with them, do gather in numbers on and along the highways and other ways by which said employees pass to and from their work, and do threaten and attempt to intimidate the said employees, and in instances too numerous to mention or specifically set forth, have attacked, assaulted, and beaten the employees of your orators and endeavored from day to day to forcibly and by violence and by threats and intimidations to prevent the employees of your orators from going to their work;" * * * "have in large numbers picketed the localities of the homes and residences of the said employees of your orators, and also the highways and other ways by which they pass to and from their work, and in many instances too numerous to mention, have done this with their wives and other women of their families, and have attacked and assaulted the said employees with brooms dipped in filth of the worst description, and have thrown such filth at the said employees, and thereby, and by other means of violence, have from

day to day and continuously endeavored forcibly to prevent the said employees from working for your orators; * * * that the said illegal acts and doings of the said defendants still continue from day to day, and that the said defendants threaten and intend to continue the same, whereby your orators aver that they and each of them are from day to day subject to the same and to the great and irreparable damage to their respective properties and business, as well as to the great financial losses resulting therefrom, and that the said defendants are wholly financially irresponsible, and could not in any degree respond to your orators or either or any of them in damages."

In conclusion, an injunction to restrain such alleged unlawful acts is asked for in a proper prayer for relief.

The bill is sworn to by seven officers and employees of complainants who depose and say that they are authorized to sign and verify said bill; that they know the contents thereof, and that the same and the several allegations thereof are true of their own knowledge, "except as to matters therein stated on information and belief, and as to such matters they believe them to be true." In that connection it is to be noted that the charges just quoted from the bill, and others of like import, are stated positively, without qualification, and not upon information and belief.

Defendants, through counsel, entered their appearance in said suit, and were served with a copy of the bill. They filed no answer, but moved the court to dissolve the injunction as improvidently issued because the allegations in complainants' bill are too general in their nature, not properly verified, and not supported by any showing on which a temporary injunction should or could have been granted. No contrary showing was made. The motion was stated to be "based upon the alleged insufficiency of the bill," under which it was urged and argued that the court had no power to grant an injunction. The court

adopted this view and dissolved the injunction in toto, giving complainants leave to make further application supported by affidavits on not less than 10 days' notice to defendants, saying in his opinion:

"This court will protect the right of every man who wants to work not to be interfered with by violence, intimidation, or threats; * * * this court will stretch out its arms to protect both sides in those rights."

During the hearing of the motion, on September 29, 1913, counsel for complainants, on intimation from the court that the injunction previously granted was "too broad and sweeping," requested the granting of a modified order restraining specified acts of violence and intimidation, certain of which the court stated were "unquestionably not debatable," and "the courts practically unanimous in preventing" them, but, after discussion, this was refused, the court saying:

"I will deny the restraining order and leave you to whatever course you want to take. I am satisfied from Mr. K——'s argument that I have no power to issue it."

After further discussion, being asked to reserve the right to issue a restraining order in case of future developments which might make it seem necessary, the court said:

"Well, I do reserve that right to issue a restraining order, without notice, upon showing made by affidavits, with or without notice."

On October 4, 1913, relators presented to respondent an application for a restraining order, accompanied by many affidavits disclosing that a situation had developed immediately upon the dissolution of the injunction which clearly made it the duty of the court to stretch out its arm and exercise that right.

The affidavits, 84 in number, are freighted with

narratives of rioting, acts of violence, threats, insults, and intimidation of men, women, and children too numerous to attempt to repeat here, fully substantiating and showing continuation of the unlawful conduct by defendants alleged in complainants' bill. The affiants testify positively from personal experience and observation. The affidavits are not only made by employees of complainants and their families, but by others, officials and private citizens, in many walks of life. They tell of the strikers, members of the defendant federation, and their sympathizers parading with noise and insults and threats, attacking, assaulting, and driving back peaceable workmen going to their employment, of men irregularly grouped together in bands of from ten to a dozen to mobs of six and seven hundred at various times both day and night, with threatening demonstrations and words, of their lying in wait for and attacking employees of complainants as they went to and from their work, assaulting them with clubs and rocks, snatching from them their dinner pails and trampling them upon the streets, applying to them vile and vulgar epithets, threatening violence not only to themselves, but to their families, to kill, to dynamite, and to blow up their houses. They tell of peaceable citizens of long residence in those communities, with their established homes and families there and whose only offense was an attempt to continue work where and as they had been employed for many years, being assaulted on the highways, mobbed, their clothing torn from them, spit upon, coal ashes and slops thrown on them, bottles and rocks hurled at them often inflicting serious injuries, even in sight of their wives watching from their homes, of boarding houses and homes of nonunion men being surrounded and stoned, with taunts and insulting threats, of women and girls struck with missiles and injured on such occasions, of mobbing trains, defying the civil authorities, re-

sisting and assaulting officers, of resort to firearms in which employees of complainants and others were wounded, and other overt acts of lawlessness, disorder, and violence clearly substantiating the allegations in complainants' bill, and fairly indicating concerted action on the part of defendants to promote the strike by an aggressive policy of force and intimidation. Upon such showing the trial court again refused to grant any relief, and this application for a mandamus followed. Touching the last application respondent in his answer says:

"Respondent is unable to ascertain from a reading of the petition for a mandamus, and the order to show cause thereon, what relation the second application of petitioners for a temporary writ, which second application was accompanied by the affidavits in question, has in the consideration of the questions before respondent on the motion to dissolve."

This application and the showing then made were in connection with the bill of complaint in support of it, and manifestly based on the right retained by the court on dissolving the injunction to later issue a restraining order, with or without notice, upon showing made by affidavits. In view of this and the assertion of the court that he would protect every man who wanted to work, from violence or intimidation, it was proper, and the duty of relators to again apply to that court for relief before appealing elsewhere.

Briefly stated, respondent's answer is that, though disposed to grant a restraining order, he had no power to do so because of the insufficiency of the bill. Upon that proposition the answer states:

"Respondent was disposed at said time to issue some form of restraining order, but that his final determination was that under the bill as filed, respondent had no power or authority to issue such restraining order, and thereupon respondent signed and caused to be filed the order dissolving the writ of injunction issued in said proceedings; * * *" and

alleges that "after a full and fair consideration of the matter at the time of the hearing on the motion to dissolve, respondent then concluded and now is satisfied, that in the form in which said bill is filed, respondent then had no authority to issue a temporary injunction upon such a showing, and that he is now satisfied that his act in issuing or granting said temporary injunction was improvident and was not justified under the rules and practice obtaining in this State relative to the issuance of temporary restraining orders by chancellors."

The question before us, therefore, is, primarily, one of law. The return shows respondent exercised no discretion as to the injunction, holding, as a matter of law, that he had no power to do so.

The motion to dissolve the injunction being without answer or opposing affidavits, the allegations in the bill are to be taken as true. *Schwarz* v. *Sears*, Har. Ch. (Mich.) 440. The facts stated in the bill, showing conspiracy, illegal acts of violence and intimidation, committed and continuing, are to be treated as confessed and admitted, if properly pleaded.

The bill is certainly not demurrable. It states a case with sufficient averments and general allegations of facts which, if sustained by proof on final hearing, would entitle complainants to the relief asked.

The contention that the bill of complaint is not properly verified is untenable. As before stated, it is sworn to positively by seven affiants of their own knowledge, with the usual reservation found in the form of such jurats, "except as to matters therein stated upon information and belief," and the material allegations in the bill essential to entitle complainants to relief if proven are stated without qualification.

The chief charge of insufficiency against the bill is that its averments are too general, more in the nature of conclusions than distinct statements of facts, and state no specific acts of particular individuals, with time, place, and attending circumstances such as good

pleading demands. While it is permissible, and sometimes requisite, to set forth the facts and acts relied on fully and with particularity in a bill, as a rule general certainty is sufficient in a pleading in equity. It is not required to relate the details:

"It is not necessary to charge minutely all the circumstances, which may conduce to prove the general charge; for these circumstances are properly matters of evidence, which need not be charged in order to let them in as proofs." Story's Equity Pleadings, section 28.

As a pleading this bill contains a sufficient, though general, statement of the essential ultimate facts involved in the controversy, which, taken as true, confer on the court authority to grant permanent relief by injunction, and if necessity is shown, temporary relief until final hearing. We find here that the court did in the first instance grant this temporary relief by injunction, on September 20th, in apparent exercise of his discretion, and, on September 29th, withdrew such relief by dissolution of the same, because convinced by argument of counsel that he had no discretion in the matter. The effect of this action, under the circumstances disclosed in the record, is a matter of which it is no violence to say there might be some judicial notice and foresight. When the probable results were suggested by counsel, with an application for some kind of restraining order to guard against the same, the court indicated a desire to grant the relief, and apparently only refrained on the ground that he had no power under the bill. When later, on October 4th, further application was made, supported by a large number of affidavits disclosing fully the condition which had developed, as was previously feared, the court again refused for the same reason. We are impelled to hold that the respondent misconstrued the law and his official duty, under the showing made.

When such an application is made for preliminary protection, the questions to be passed upon and determined from the showing are only the necessary factors in granting or denying a temporary restraining order.

"It is not necessary that the complainant's rights be clearly established, or that the court find complainant is entitled to prevail on the final hearing. It is sufficient if it appears that there is a real and substantial question between the parties, to be investigated in a court of equity, and, in order to prevent irremedial injury to the complainant, before his claims can be investigated, it is necessary to prohibit any change in the conditions and relations of the property and of the parties during the litigation." *Goldfield, etc., Mines Co.* v. *Miners' Union* (C. C.), 159 Fed. 511.

And this is especially true when not only the safety of property but the peace of a community and the choice of action and even the lives of peaceable citizens and their families, when in the pursuit of their lawful avocations, are menaced by disorder, threats, and violence.

The power and duty of courts of equity to restrain, on proper application, conspiring labor organizations and their members, as well as others in the conspiracy, from molesting by violence, threats, and intimidation, or any other unlawful interference with, those engaged in any lawful employment and those employing them, is too well established and too thoroughly reviewed by our own authorities to call for citations from other States or discussion here. *Beck* v. *Protective Union,* 118 Mich. 497 (77 N. W. 13, 42 L. R. A. 407, 74 Am. St. Rep. 421); *United States Heater Co.* v. *Molders' Union,* 129 Mich. 354 (88 N. W. 889); *Ideal Manfg. Co.* v. *Ludwig,* 149 Mich. 133 (112 N. W. 723, 119 Am. St. Rep. 656); *Id.,* 149 Mich. 699 (113 N. W. 20); *Enterprise Foundry Co.* v. *Iron Molders' Union,* 149 Mich. 31

(112 N. W. 685, 13 L. R. A. [N. S.] 598) ; *Escanaba Manfg. Co.* v. *Labor Council,* 160 Mich. 656 (125 N. W. 709) ; *Baldwin* v. *Liquor Dealers' Ass'n,* 165 Mich. 98 (130 N. W. 214) ; *Ideal Manfg. Co.* v. *Wayne Circuit Judge,* 139 Mich. 92 (102 N. W. 372).

In the latter case, as in this, the respondent failed to exercise the discretion which the law required of him under the circumstances, and declined to issue an injunction, through an apparent misconception of the law, and this court directed a mandamus requiring him to issue a restraining order.

We are constrained to hold that the writ prayed for must issue herein, directing respondent to vacate his order, setting aside and dissolving the temporary injunction theretofore granted by him and continue the same as indicated in the order to show cause issued by this court, until final hearing of said injunction suit, or until changed conditions shown to the court render the same no longer necessary. On the oral argument of this application learned counsel for the Quincy Mining Company said:

"The backbone of the strike was about broken when this court modified the former injunction, and the strikers have taken occasion to take a different meaning to it in its present form than, perhaps, the court meant in modifying its terms."

We find difficulty in reconciling this statement with the conditions existing at the time referred to, as represented to us by the verified emergency application and accompanying affidavits presented by relators. At that time there was no injunction in force from any court, and it was represented that the strike had gathered such strength, developed in magnitude, and sprung into such lawless activity that the property of complainants and the lives of their employees were in imminent jeopardy, demanding immediate action, without time for notice, to save them from irreparable injury. We advert to this only because of the

alleged misunderstanding as to our order and the fact that counsel has filed a brief along those lines. This court, as such, is not concerned with strikes or their continuance, as such. Courts do not grant injunctions to restrain strikes lawfully conducted. They are only concerned with them when lawlessness and acts of violence and intimidation develop from them.

To avoid any misapprehension, let it be understood, and, if necessary, further provided, that parades directed to and loitering at and around the premises of complainants or the homes of their employees, and so timed and conducted as to meet and obstruct such employees going to and from their work during morning and evening changes of shift, and any and all meeting and parading accompanied by acts of violence, threats, insults, or hostile demonstrations towards complainants or their employees either by act or word are in no sense "peaceable meeting and parading," but directly to the contrary, and all such conduct must be regarded as strictly within that provision of the injunction prohibiting defendants "from impeding, obstructing, molesting, or disturbing the employees of the said complainants or any of them by threats, violence, insults, gatherings, parades, or any form of intimidation whatsoever or by any acts of any kind calculated or intended as or for intimidation of the said employees or any of them."

Let a writ of mandamus be issued as above indicated.

STONE and OSTRANDER, JJ., did not sit.