*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

STONE AGE PROPERTIES, LLC, and MOTOR CITY TOYS, INC.,

      Plaintiffs-Appellees,

v

800 GOLF DRIVE, LLC, doing business as THE LINKS OF CRYSTAL LAKE,

      Defendant-Appellant.

UNPUBLISHED
June 6, 2024

No. 363776
Oakland Circuit Court
LC No. 2022-194938-CB

Before: GADOLA, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the trial court's opinion and order granting plaintiffs' motion for preliminary injunction. For the reasons set forth in this opinion, we reverse and remand.

## I. BACKGROUND

Defendant is the owner of a property located at 800 Golf Drive, Pontiac, Michigan, which is operated as a golf course under the name of The Links at Crystal Lake. Plaintiff Stone Age Properties, LLC (SAP), is the owner of an adjacent property located at 340 Rockwell Avenue, which SAP acquired on September 25, 2019. SAP's property is surrounded on three sides by defendant's golf course. Plaintiff Motor City Toys, Inc. (MCT), leases the SAP property and operates a facility for the storage of vintage automobiles on the premises. MCT began leasing the property on October 1, 2019, for a six-year term ending on September 30, 2025.

In July 2022, plaintiffs jointly filed a complaint against defendant for trespass, private nuisance, declaratory relief, and injunctive relief, alleging that defendant knowingly permitted wayward golf balls to land on the SAP property, hitting structures and vehicles stored on the SAP

---

[1] *Stone Age Properties LLC v 800 Golf Drive LLC*, unpublished order of the Court of Appeals, entered August 1, 2023 (Docket No. 363776).

property and causing safety risks to individuals lawfully present on the SAP property. According to plaintiffs, a vehicle's sideview mirror had been damaged by one of these wayward golf balls. Plaintiffs alleged that defendant did not hold an easement over the SAP property with respect to the stray golf balls from its business, and plaintiffs contended that defendant was liable for trespass and nuisance by unlawfully intruding on the SAP property and interfering with plaintiffs' use and enjoyment without authorization.

In their complaint, plaintiffs sought a declaration from the court that they were entitled to enjoy the use of the SAP property "free and clear from golf balls entering the Property," that defendant "shall not cause or allow to be caused golf balls to enter the SAP Property," and that defendant did not hold any type of "golf ball easement" related to the SAP property. Plaintiffs also sought to permanently enjoin defendant from allowing wayward golf balls to enter the SAP property from the golf course, and plaintiffs sought money damages with respect to their private nuisance and trespass claims. A concurrent motion for a preliminary injunction accompanied plaintiffs' complaint.

In opposition to the motion for a preliminary injunction, defendant argued that plaintiffs were unreasonably requesting the court to enjoin use of three holes on defendant's golf course until the matter was resolved, which would alter the status quo and essentially grant plaintiffs the complete relief they sought on their claims before a resolution on the merits. Defendant further contended that (1) plaintiffs had failed to allege an imminent specific injury sufficient to rise to the level of irreparable harm; (2) a preliminary injunction would actually change the status quo because the injunction would require the discontinued use of three holes on defendant's golf course, cost defendant "thousands of dollars," and upset defendant's clientele, even though plaintiffs were aware of the risks of purchasing or leasing property adjacent to a golf course; (3) plaintiffs were unlikely to succeed on the merits of any of their presented claims under the nuisance and trespass theories for a myriad of reasons; and (4) the public interest would not be served by an injunction that prevented the legal operation of an entity complying with valid and existing industry standards.

Defendant attached to its response the affidavit of defendant's operations manager, Ryan Parker. He averred that the golf course had been purchased by the Parker family in 2013, after which 800 Golf Drive, LLC was formed. The golf course was previously owned by the city of Pontiac and operated as a municipal golf course. The golf course had been in operation for approximately 70 years, had been redeveloped in 1993, and had reopened in 1995. Parker also averred that there had been no modifications to the configuration or use of the golf course since the 2013 acquisition.

Following a hearing, the trial court issued its opinion and order granting plaintiffs' motion for a preliminary injunction and enjoining defendant from "permitting wayward golf balls from being hit from The Links at Crystal Lake and onto the plaintiffs' property." The court determined (1) the public interest in protecting persons from injury outweighed the continued operation of the golf course without regard to public safety, (2) the balance of harm favored granting the injunctive relief, (3) plaintiffs established they were likely to prevail on the merits, and (4) there was a showing of significant risk of irreparable harm because an injunction would prevent the risk of potential personal injuries. The trial court denied defendant's motion for reconsideration.

Defendant filed an application for leave to appeal in this Court, and we peremptorily reversed the trial court's order on the ground that plaintiffs only demonstrated apprehension of a future injury and thus did not meet their burden to show irreparable harm.[2]  Our Supreme Court reversed and remanded this matter to this Court for reconsideration.  *Stone Age Properties v 800 Golf Drive LLC*, 511 Mich 1046; 992 NW2d 285 (2023).  Our Supreme Court stated in relevant part:

> The Court of Appeals reversibly erred when it concluded that the threat of personal injury posed by wayward golf balls amounts to a "'mere apprehension of future injury,' which 'cannot be the basis for injunctive relief.'"  *Stone Age Props LLC v 800 Golf Drive LLC*, unpublished order of the Court of Appeals, issued January 4, 2023 (Docket No. 363776), quoting *Pontiac Fire Fighters Union Local 376 v City of Pontiac*, 482 Mich 1, 9; 753 NW2d 595 (2008).  The record supports the trial court's finding here that the threat of personal injury caused by wayward golf balls is "actual rather than theoretical."  *Thermatool Corp v Borzym*, 227 Mich App 366, 377; 575 NW2d 334 (1998); see also *Mich Coalition of State Employee Unions v Mich Civil Serv Comm*, 465 Mich 212, 228; 634 NW2d 692 (2001) (recognizing that irreparable harm need not have already occurred in order for preliminary injunctive relief to be granted); *Niedzialek v Journeymen Barbers, Hairdressers & Cosmetologists' Int'l Union of America*, 331 Mich 296, 300; 49 NW2d 273 (1951) ("It is the settled policy of this Court under such circumstances to grant to a litigant who is threatened with irreparable injury temporary injunctive relief and thereby preserve the original status quo.") (emphasis added).  On remand, the Court of Appeals shall consider the other factors required for a preliminary injunction.  See *Detroit Fire Fighters Ass'n, IAFF Local 344 v Detroit*, 482 Mich 18, 34; 753 NW2d 579 (2008) (holding that in reviewing a request for a preliminary injunction, the "court must evaluate whether (1) the moving party made the required demonstration of irreparable harm, (2) the harm to the applicant absent such an injunction outweighs the harm it would cause to the adverse party, (3) the moving party showed that it is likely to prevail on the merits, and (4) there will be harm to the public interest if an injunction is issued").  [*Stone Age Properties*, 511 Mich at 1046.]

As previously stated, this Court entered an order granting leave to appeal.  We now turn to the merits of defendant's appeal challenging the propriety of the trial court's order granting a preliminary injunction.

## II.  STANDARD OF REVIEW

"[A] trial court's decision to grant injunctive relief is reviewed for an abuse of discretion." *Johnson v Mich Minority Purchasing Council*, 341 Mich App 1, 8; 988 NW2d 800 (2022) (quotation marks and citation omitted; alteration in original).  A court abuses its discretion when its decision falls "outside the range of reasonable and principled outcomes." *Barrow v Wayne Co*

---

[2] *Stone Age Properties LLC v 800 Golf Drive LLC*, unpublished order of the Court of Appeals, entered January 4, 2023 (Docket No. 363776).

*Bd of Canvassers*, 341 Mich App 473, 484; 991 NW2d 610 (2022). The trial court's findings of fact in deciding a motion for a preliminary injunction are reviewed for clear error. *Mich AFSCME Council 25 v Woodhaven-Brownstown Sch Dist*, 293 Mich App 143, 146; 809 NW2d 444 (2011).

## III. ANALYSIS

"[I]njunctive relief is an extraordinary remedy that issues only when justice requires, there is no adequate remedy at law, and there exists a real and imminent danger of irreparable injury." *Davis v Detroit Fin Review Team*, 296 Mich App 568, 613-614; 821 NW2d 896 (2012) (quotation marks and citation omitted). "The purpose of a preliminary injunction is to preserve the status quo pending a final hearing regarding the parties' rights." *Hammel v Speaker of House of Representatives*, 297 Mich App 641, 647; 825 NW2d 616 (2012) (quotation marks and citation omitted). "To obtain a preliminary injunction, the moving party bears the burden of proving that the traditional four elements favor the issuance of a preliminary injunction." *Id*. at 648 (quotation marks and citation omitted); see also MCR 3.310(A)(4). When determining whether to grant a preliminary injunction, the trial court

> must evaluate whether (1) the moving party made the required demonstration of irreparable harm, (2) the harm to the applicant absent such an injunction outweighs the harm it would cause to the adverse party, (3) the moving party showed that it is likely to prevail on the merits, and (4) there will be harm to the public interest if an injunction is issued. [*Detroit Fire Fighters Ass'n, IAFF Local 344 v Detroit*, 482 Mich 18, 34; 753 NW2d 579 (2008).]

"The mere apprehension of future injury or damage cannot be the basis for injunctive relief. Equally important is that a preliminary injunction should not issue where an adequate legal remedy is available." *Pontiac Fire Fighters Union Local 376 v Pontiac*, 482 Mich 1, 9; 753 NW2d 595 (2008) (citation omitted). "Other considerations surrounding the issuance of a preliminary injunction are whether it will preserve the status quo so that a final hearing can be held without either party having been injured and whether it will grant one of the parties final relief before a hearing on the merits." *Thermatool Corp v Borzym*, 227 Mich App 366, 376; 575 NW2d 334 (1998).

### A. IRREPARABLE HARM

The first factor to consider is whether plaintiffs demonstrated the requisite irreparable harm. *Detroit Fire Fighters*, 482 Mich at 34. The trial court in this case concluded that plaintiffs' allegations regarding damage to property on its premises that had been suffered and would be suffered unless defendant was enjoined from permitting errant golf balls to land on plaintiffs' premises did not constitute irreparable harm because plaintiffs had an adequate legal remedy in the form of monetary damages for such harm. However, the trial court concluded that plaintiffs had provided evidence of golf balls landing on their property that posed a risk of personal injury to employees and customers lawfully on plaintiffs' property, which was sufficient to establish irreparable harm such that this factor favored plaintiffs.

In our previous order, this Court reversed the trial court's order granting the preliminary injunction solely because this Court concluded that plaintiffs had merely shown apprehension of a

future injury that could not support injunctive relief and that plaintiffs therefore had failed to meet their burden of demonstrating irreparable harm without issuance of a preliminary injunction. This Court did not discuss or analyze the other factors of the preliminary injunction test. Our Supreme Court reversed, stating that the "Court of Appeals reversibly erred when it concluded that the threat of personal injury posed by wayward golf balls amounts to a mere apprehension of future injury, which cannot be the basis for injunctive relief," and the Supreme Court stated further that the "record supports the trial court's finding here that the threat of personal injury caused by wayward golf balls is actual rather than theoretical." *Stone Age Properties*, 511 Mich at 1046 (quotation marks and citations omitted). The Supreme Court directed our attention to caselaw holding that a preliminary injunction may properly be granted based on threats of irreparable harm and that the irreparable harm need not have already occurred before a preliminary injunction may be granted. *Id*. The Supreme Court ordered this Court to consider the other factors of the preliminary injunction test on remand and then cited the complete test. *Stone Age Properties*, 511 Mich at 1046.

Accordingly, we understand our task as directed by the Supreme Court to be to conduct a full analysis of all of the preliminary injunction factors to determine whether the trial court abused its discretion in granting a preliminary injunction. The first question thus becomes whether our present analysis should include the irreparable harm factor. In light of our reasoning in our prior order that was reversed and the clear language of our Supreme Court's order, we conclude that this question must be answered in the affirmative. There is no language in our Supreme Court's order directing this Court to conclude, without analysis or "reconsideration," that this factor favors plaintiff. The Supreme Court simply concluded that there was sufficient record evidence to support the trial court's finding that there was an actual threat of personal injury from wayward golf balls.

Nonetheless, the alleged harm—here, the degree of personal injury threatened by the wayward golf balls— "must be both certain *and great*, and it must be actual rather than theoretical." *Thermatool*, 227 Mich App at 377 (emphasis added). Although the Supreme Court has concluded in the present case that the *existence* of the threatened personal injury from errant golf balls is not "speculative or conjectural," see *Pontiac Fire Fighters Union*, 482 Mich at 9 n 15 (quotation marks and citation omitted), the Supreme Court did not indicate any conclusion on whether the threatened harm was sufficiently "great" or "irreparable." A preliminary injunction "will not be allowed where the injury which will result from the invasion of that right is not *irreparable*." *Mich Coalition of State Employee Unions v Mich Civil Serv Comm*, 465 Mich 212, 224; 634 NW2d 692 (2001) (quotation marks and citation omitted; emphasis added). It is well settled that regardless of the certainty with which the alleged harm will occur, not every type of harm is sufficient to support a *preliminary* injunction, which is a form of extraordinary relief that may be granted "before there is even a determination of the merits of a case," *id*. at 227-228. Notably, however, a party that fails to obtain a preliminary injunction is not precluded from subsequently obtaining appropriate injunctive relief following a decision on the merits should the party prevail; the question at the present stage is merely whether plaintiffs are entitled to the extraordinary relief of a preliminary injunction preceding a decision on the merits of the action. See *id*. at 226-228.

Hence, in accordance with the directive of our Supreme Court, we now undertake a complete analysis of the preliminary injunction test, beginning with consideration of whether

-5-

plaintiffs met their burden of showing that the threatened harm of personal injury from the wayward golf balls constituted a threat of *irreparable* injury.

Plaintiffs, as the parties seeking the preliminary injunction, bore the burden to establish that they would suffer irreparable harm unless the court issued a preliminary injunction. *Hammel*, 297 Mich App at 651. It is well settled that "that a showing of irreparable harm is a requirement for the issuance of a preliminary injunction," and a preliminary injunction may be warranted " 'if it appears that there is a real and substantial question between the parties, to be investigated in a court of equity, and, in order to prevent irremedial injury to the complainant, before his claims can be investigated, it is necessary to prohibit any change in the conditions and relations of the property and of the parties during the litigation.' " *Mich Coalition of State Employee Unions*, 465 Mich at 224-226, quoting *Baltic Mining Co v Houghton Circuit Judge*, 177 Mich 632, 642; 144 NW 209 (1913). "A party must demonstrate 'a particularized showing of irreparable harm' and '[t]he injury is evaluated in light of the totality of the circumstances affecting, and the alternatives available to, the party seeking injunctive relief.'" *Hammel*, 297 Mich App at 652 (citation omitted; alteration in original). "In order to establish irreparable injury, the moving party must demonstrate a noncompensable injury for which there is no legal measurement of damages or for which damages cannot be determined with a sufficient degree of certainty." *Thermatool*, 227 Mich App at 377.

It is *not* necessary "that irreparable harm must have already occurred in order for [preliminary] injunctive relief to be available." *Mich Coalition of State Employee Unions*, 465 Mich at 228 (quotation marks and citation omitted; alteration in original). A "litigant who is threatened with irreparable injury" may be granted temporary preliminary injunctive relief to "preserve the original status quo." *Niedzialek v Journeymen Barbers, Hairdressers & Cosmetologists' Int'l Union of America*, 331 Mich 296, 298-301; 49 NW2d 273 (1951) (holding that the plaintiff would suffer irreparable harm based on defendants' threatening and intimidating behavior directed at the plaintiff, his employees, and his customers as defendants picketed plaintiff's shop, which warranted a preliminary injunction where defendants would not suffer any material harm from being temporarily prohibited from such picketing).

A party must nevertheless show, however, "that it will *otherwise imminently* suffer *irreparable* harm and [that] the other proper grounds for such relief are satisfied" for a preliminary injunction to be properly granted. *Mich Coalition of State Employee Unions*, 465 Mich at 228 (emphasis added). As previously stated, the alleged irreparable injury "must be both certain and great, and it must be actual rather than theoretical." *Thermatool*, 227 Mich App at 377. "Economic injuries are not irreparable because they can be remedied by damages at law," and a "relative deterioration of competitive position does not in itself suffice to establish irreparable injury." *Id*.

In this case, there is record evidence that golf balls have landed on plaintiffs' property, despite the existence of some fencing and trees between the golf course and plaintiffs' property. There is no evidence that any individuals have been hit by a golf ball. As our Supreme Court has made clear, it was not necessary for plaintiffs to have shown that an actual personal injury from an errant golf ball occurred. However, there is no evidence in the record from which the trial court could have discerned that the threatened injury, under the precise circumstances present in this case, was sufficiently great to be considered "irreparable." See *Hammel*, 297 Mich App at 652. Plaintiffs cannot simply rely on the allegations in their complaint or the bare assertions of counsel to justify preliminary injunctive relief; plaintiffs must sufficiently demonstrate their entitlement to

this extraordinary relief. See MCR 3.310(A) (requiring a hearing at which the moving party has the burden to establish that a preliminary injunction should issue); *Sandstone Creek Solar, LLC v Twp of Benton*, 335 Mich App 683, 706; 967 NW2d 890 (2021) ("A preliminary injunction generally is considered a form of equitable relief intended to maintain the status quo pending a final hearing determining the rights of the parties . . . and is considered an extraordinary remedy . . . .").

The trial court reasoned that the threat of personal injury was irreparable and not compensable by monetary damages[3] because "Very few people will say something like, 'yes, you can cut off my right arm for $500,000.'" However, there is no record evidence from which the trial court could have found that the potential severity of an injury to a person who was on plaintiffs' property and outside the boundaries of the golf course would be comparable to a severed arm. For example, there was no evidence of the general severity of golf ball related injury, no evidence suggesting the distance a golf ball typically needed to travel to reach plaintiffs' property, and no evidence of the velocity at which a golf ball might be traveling by the time it reached a point where it could potentially strike a person on plaintiffs' property. There is also no evidence that defendant is somehow encouraging golfers to intentionally launch golf balls onto plaintiffs' property or otherwise creating a threat of intentional violence or intimidation that would constitute irreparable harm. See *Niedzialek*, 331 Mich at 298-301.

We do not disagree that monetary damages may seem, from a practical standpoint, an inadequate form of compensation for some types of personal injuries such that a court could conceivably be justified in deeming them "irreparable" for purposes of a preliminary injunction.[4] However, it is also axiomatic that not all personal injuries are catastrophic or inherently not compensable. On this record, there is no means of discerning whether the potential personal injuries that could occur fall into the first or second of these categories.

During oral argument, plaintiffs' counsel relied heavily on the alleged threat of *fatal* harm from the errant golf balls. But again, plaintiffs have not provided *any* evidence of a golf ball striking a person outside of the boundaries of a golf course's property and causing serious injury or death. We do not conclude that such an occurrence is inherently impossible but simply note that it is plaintiffs' burden to demonstrate the entitlement to this extraordinary preliminary injunctive relief—before the merits have been fully litigated—and that plaintiffs have completely failed to meet this burden because they have provided no evidence to support their contentions.

---

[3] As we have already stated, "a preliminary injunction should not issue where an adequate legal remedy is available." *Pontiac Fire Fighters Union*, 482 Mich at 9.

[4] As the trial court noted, personal injuries are compensated through monetary damages on a regular basis, suggesting that in general, there is an adequate legal remedy for personal injuries and that personal injuries do not support a finding of irreparable harm. *Thermatool*, 227 Mich App at 377. Here, we leave open the question whether there is an outer limit to this principle in this context for certain extremely serious and preventable personal injuries, which may potentially justify a finding of irreparable harm for purposes of a preliminary injunction. We need not answer this question in this case because plaintiffs have not provided any evidence of such types of potential personal injuries.

There is no absolute entitlement to a preliminary injunction, *Grand Rapids Electric R Co v Calhoun Circuit Judge*, 156 Mich 419, 422; 120 NW 1004 (1909), and this form of extraordinary relief does not exist as a means for short-circuiting the litigation and obtaining complete relief (on an extremely limited record) before allowing the litigation process to run its course in reaching a full resolution on the merits by reference to a fully developed record, see *Epworth Assembly v Ludington & N R*, 223 Mich 589, 596; 194 NW 562 (1923); *Mich Coalition of State Employee Unions*, 465 Mich at 228-229; *Thermatool Corp*, 227 Mich App at 376.

We are aware that our Supreme Court has stated, "The probable danger of injury to children playing on a golf course requires no elaboration. [A] powerfully driven golf ball in flight is a projectile of lethal qualities, as this record amply demonstrates." *Lyshak v Detroit*, 351 Mich 230, 239; 88 NW2d 596 (1958) (opinion by SMITH, J.). However, as this statement suggests, the circumstances in *Lyshak* involved a child who was physically present within the boundaries of the golf course, without permission, and lost his sight in one eye when he was struck by a golf ball. *Id*. at 231, 238-239.[5] There is no evidence of remotely analogous facts in the instant case.

The trial court in this case, in reaching its conclusion on irreparable harm, resorted to speculation and hyperbole that was unsupported by the record, thereby committing clear error in its factual findings. *Mich AFSCME Council 25*, 293 Mich App at 146. Plaintiffs failed to meet their burden of showing irreparable harm at the preliminary injunction stage. *Hammel*, 297 Mich App at 648. This factor favors defendant.

## B. BALANCE OF HARDSHIPS

---

[5] The Court's description in *Lyshak* of the facts of the actual incident makes clear how different the circumstances in that case were from those in the present case. In *Lyshak*, the Court stated:

> Defendant Dalrymple, in fact, the golf professional and Powers' assistant on this course, testified that he personally observed the group of boys in the fairway before any drives were made from the thirteenth tee. 'When I approached the thirteenth tee and was ready to tee off, these youngsters were right in the middle of the fairway.' And, later, 'the boys started to scatter, and this young Billy Lyshak was unfortunate enough not to get out of the way and he got it.' Upon these facts, infant plaintiff, even if a trespasser, was a known trespasser. It was not merely to be anticipated that he might be there, along with other children. He was there, he was seen, his presence was actually known to the golf professional assigned to the course . . .." [*Lyshak*, 351 Mich at 250-251.]

Here, there is no evidence of golfers on defendant's golf course observing individuals on plaintiffs' property and purposely hitting golf balls in the general direction of those individuals. Thus, while the golf balls may have been lethal projectiles with respect to individuals located on the fairway of play in *Lyshak*, there is no evidence *on the current record*, that all golf balls are inherently lethal projectiles with respect to individuals located on plaintiffs' property and not within the bounds of defendant's golf course. No citation of authority is necessary for the obvious conclusion that a golf ball is not inherently lethal under all possible circumstances.

Next, we consider whether "the harm to the applicant absent such an injunction outweighs the harm it would cause to the adverse party." *Detroit Fire Fighters Ass'n*, 482 Mich at 34.

The trial court found that the balance of harms favored plaintiffs because plaintiffs and their customers faced "the threat of physical and property damage" and defendant "only face[d] the challenge of reorienting its business to avoiding the risk it poses to the Plaintiffs and their customers." As we have already discussed, there is no record evidence from which we can determine the extent of the potential physical harms to individuals on plaintiffs' property. Damage to property that plaintiffs may experience involves a financial cost, as does making changes to defendant's golf course to prevent stray golf balls from leaving the property. However, there is also no record evidence of the extent of these costs. There was simply no basis on which the trial court could legitimately weigh these potential harms without resorting to speculation. Accordingly, its unfounded finding was clearly erroneous. *Mich AFSCME Council 25*, 293 Mich App at 146. On this record, plaintiffs have failed to carry their burden of showing that the harm they will suffer without the preliminary injunction outweighs the harm to defendant with the injunction in place. This factor is neutral.

## C. LIKELIHOOD OF SUCCESS ON THE MERITS

We next consider whether plaintiffs showed that they are "likely to prevail on the merits" of their claims. *Detroit Fire Fighters Ass'n*, 482 Mich at 34.

In addressing this factor, the trial court concluded that plaintiffs had established that they were "moderately" likely to prevail on the merits of their trespass and nuisance claims. On appeal, defendant argues that plaintiffs failed to establish a likelihood of success on the merits of either of these claims. We will address both the trespass and nuisance claims since the trial court relied on both of those claims and defendant-appellant challenges the trial court's conclusion on both of those claims.

We acknowledge that the question at this stage is only whether plaintiffs are entitled to preliminary injunctive relief, and that a preliminary injunction does not require "that the complainant's rights be clearly established, or that the court find complainant is entitled to prevail on the final hearing." *Baltic Mining*, 177 Mich at 642. Nevertheless, the party seeking a preliminary injunction still has the burden to show that it is likely to ultimately prevail on the merits as part of showing that the extraordinary relief of a preliminary injunction is warranted. *Hammel*, 297 Mich App at 648; *Detroit Fire Fighters Ass'n*, 482 Mich at 34; *Sandstone Creek Solar*, 335 Mich App at 706; MCR 3.310(A).

"Claims of trespass and nuisance include overlapping concepts and are difficult to distinguish." *Terlecki v Stewart*, 278 Mich App 644, 653; 754 NW2d 899 (2008). "[T]respass is an invasion of the plaintiff's interest in the exclusive possession of his land, while nuisance is an interference with his use and enjoyment of it." *Adams v Cleveland-Cliffs Iron Co*, 237 Mich App 51, 59; 602 NW2d 215 (1999) (quotation marks and citation omitted; alteration in original). Neither the parties nor this Court have been able to locate an opinion by a Michigan appellate court involving claims of trespass or nuisance asserted against a golf course based on wayward golf balls from the course landing on neighboring property, which obviously would have provided more

directly applicable guidance on the merits question under the facts presented in this case. We thus begin with the general legal principles of these related claims.

Despite their many practical similarities, trespass and nuisance remain distinct legal doctrines in Michigan. *Adams*, 237 Mich App at 72-73. "Recovery for trespass to land in Michigan is available only upon proof of an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession." *Id*. at 67. The "intrusion must be intentional," and "[i]f the intrusion was due to an accident caused by negligence or an abnormally dangerous condition, an action for trespass is not proper." *Terlecki*, 278 Mich App at 654 (quotation marks and citation omitted). "[A] 'direct or immediate' invasion for purposes of trespass is one that is accomplished by any means that the offender knew or reasonably should have known would result in the physical invasion of the plaintiff's land. *Adams*, 237 Mich App at 71.

In this case, plaintiffs have not provided any evidence that golf balls have landed on their property as the result of intentional conduct by defendant. The parties do not appear to disagree that the wayward golf balls have most likely landed on plaintiffs' property due to the well-known—and not infrequent—tendency of golfers to accidentally hit golf balls in unintended directions. On this extremely limited record, plaintiffs have not provided evidence from which a court could conclude that defendant was responsible for an intentional, direct, or immediate invasion of plaintiffs' property with golf balls, *Terlecki*, 278 Mich App at 654; *Adams*, 237 Mich App at 71, and plaintiffs have therefore not met their burden to show that they are likely to prevail on the merits of their trespass claim.

Turning to the nuisance claim, our Supreme Court has explained as follows:

A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land. It evolved as a doctrine to resolve conflicts between neighboring land uses. Because nuisance covers so many types of harm, it is difficult to articulate an encompassing definition. Imprecision in defining nuisance leads to confusion regarding the interest it is designed to protect. Nevertheless, the gist of a private nuisance action is an interference with the occupation or use of land or an interference with servitudes relating to land. There are countless ways to interfere with the use and enjoyment of land including interference with the physical condition of the land itself, disturbance in the comfort or conveniences of the occupant including his peace of mind, and threat of future injury that is a present menace and interference with enjoyment. The essence of private nuisance is the protection of a property owner's or occupier's reasonable comfort in occupation of the land in question. It involves "not only a defect, but threatening or impending danger . . . to the property rights or health of persons sustaining peculiar relations to the same . . . ." [*Adkins v Thomas Solvent Co*, 440 Mich 293, 302-303; 487 NW2d 715 (1992) (citations omitted; ellipses in original).]

In *Adkins*, the Court provided the following elements for a private nuisance claim:

According to the Restatement, an actor is subject to liability for private nuisance for a nontrespassory invasion of another's interest in the private use and

-10-

enjoyment of land if (a) the other has property rights and privileges in respect to the use or enjoyment interfered with, (b) the invasion results in significant harm (c) the actor's conduct is the legal cause of the invasion, and (d) the invasion is either (i) intentional and unreasonable, or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct. 4 Restatement Torts, 2d, §§ 821D–F, 822, pp. 100–115.

Prosser & Keeton's enumeration of the requirements to recover on a private nuisance theory is similar. They set forth the following requirements:

> (1) The defendant acted with the intent of interfering with the use and enjoyment of the land by those entitled to the use;
>
> (2) There was some interference with the use and enjoyment of the land of the kind intended, although the amount and extent of that interference may not have been anticipated or intended;
>
> (3) The interference that resulted and the physical harm, if any, from that interference proved to be substantial. It is this requirement and the next that is most important in distinguishing between trespassory-type invasions from those that are actionable on a nuisance theory. Any intentional and unprivileged entry on land is a trespass without a showing of damage, since those who own land have an exclusive right to its use; but an act that interferes with use but is not in itself a use is not actionable without damage. The substantial interference requirement is to satisfy the need for a showing that the land is reduced in value because of the defendant's conduct;
>
> (4) The interference that came about under such circumstances was of such a nature, duration or amount as to constitute unreasonable interference with the use and enjoyment of the land. This does not mean that the defendant's conduct must be unreasonable. It only means that the interference must be unreasonable and this requires elaboration. Prosser & Keeton, [Torts (5th ed.), § 87,] pp. 622–623.

Once these general definitions have been stated, application to any given set of facts is, nevertheless, problematic. Despite almost a century during which this Court has repeatedly recognized the difficulty in defining the concept of nuisance, Michigan jurisprudence has focused on delineating the contours of various defenses, but has seldom elaborated the elements and proofs necessary to sustain a claim in nuisance absent special defenses. [*Adkins*, 440 Mich at 304-305.]

Here, plaintiffs assert that the wayward golf balls clearly constitute a nuisance. However, crucial to successfully making a nuisance claim is the requirement that the interference and any associated physical harm must be *substantial* and of such a nature, duration, or amount as to be

considered *unreasonable*. *Id*.; see also *Adams*, 237 Mich App at 67 ("To prevail in nuisance, a possessor of land must prove *significant harm* resulting from the defendant's *unreasonable interference* with the use or enjoyment of the property."). However, the only record evidence in this case relative to the degree, nature, duration, and amount of interference and harm consists of a picture of one bucket of golf balls apparently collected on plaintiffs' property over an unspecified period of time, a few other pictures depicting isolated golf balls lying on plaintiffs' property, a picture of a cracked sideview mirror on a vehicle, and claims that a patron had almost been hit by a stray golf ball.

On this record, we are unable to conclude that plaintiffs have demonstrated a "substantial" and "unreasonable" interference from the golf balls without resorting to speculation about the frequency and volume of golf balls landing on plaintiffs' property and, as discussed in the context of irreparable harm, the harm they might cause. *Adkins*, 440 Mich at 304-305; *Adams*, 237 Mich App at 67. Thus, on this record, plaintiffs have not met their burden to show that they are likely to prevail on the merits of their nuisance claim.

Our conclusion at this stage of the proceedings does not preclude plaintiffs from ultimately prevailing on the merits. We simply hold that plaintiffs have not yet provided evidence from which we could conclude that they are reasonably likely to prevail for purposes of demonstrating that they are entitled to *preliminary* relief in the form of an injunction before the parties have had the opportunity to fully develop their evidence and arguments. On remand, the parties will have that chance.

## D. POTENTIAL HARM TO THE PUBLIC INTEREST

Next, we consider whether "there will be harm to the public interest if an injunction is issued." *Detroit Fire Fighters Ass'n*, 482 Mich at 34.

We do not discern any public interest favoring either side in this matter. In general, it would seem that the public interest favors allowing lawful businesses, such as those involved on both sides of this case, to operate freely without harming individuals. As we have already discussed, there does not appear to be any evidence of any material personal harm, for which no adequate legal remedy exists, that would be prevented by granting the preliminary injunction without more severely impinging on defendant's ability to conduct its business. This factor is neutral.

## IV. CONCLUSION

Weighing the four factors, it is highly significant that plaintiffs have failed to meet their burden of showing irreparable harm or a likelihood of success on the merits of their claim. It is also highly significant that the trial court, by granting this preliminary injunction, gave plaintiffs the complete equitable relief they sought before the merits of their claims could be properly resolved based on a fully developed factual record and fully developed legal arguments, allowing plaintiffs to essentially dictate the status quo for the parties during the course of the litigation to suit plaintiffs' desired ends. This is contrary to the purpose of a preliminary injunction. See *Thermatool*, 227 Mich App at 376 ("Other considerations surrounding the issuance of a preliminary injunction are whether it will preserve the status quo so that a final hearing can be held

without either party having been injured and whether it will grant one of the parties final relief before a hearing on the merits."); *Gates v Detroit & M R Co*, 151 Mich 548, 550, 552; 115 NW 420 (1908) (stating that it was improper to grant a preliminary injunction that allowed the "complainant to determine what logs he is shipping under the contract [in dispute], and what outside of it" because this "is not preserving the status quo as known to both parties" and "permits the complainant to determine the status quo, and compels the defendant to accept his determination upon that point.").

This case is actually a fairly straightforward dispute between neighboring property owners over how one property owner's undisputedly legitimate use of property creates undesirable side effects that negatively impact the neighboring property owner. The litigation process provides a means for this dispute to be resolved. However, plaintiffs cannot use the extraordinary remedy of a preliminary injunction as a vehicle to short-circuit that process and obtain their desired result on an expedited basis without the need to first fully prove their entitlement to such relief through the full adversarial litigation process. Indeed, the process would become much less vigorous if plaintiffs had already achieved their objective that initially led them to file this action. Plaintiffs have not demonstrated that there is any harm that will occur without a preliminary injunction for which there is not an adequate legal remedy.

The trial court abused its discretion by granting the preliminary injunction. We therefore reverse and remand to the trial court for entry of an order denying plaintiffs' motion for a preliminary injunction and to conduct further proceedings not inconsistent with this opinion.

Reversed and remanded. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra

-13-